**[J-96-2013]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, OFFICE OF THE GOVERNOR | : No. 10 MAP 2013<br>:<br>: Appeal from the Order of Commonwealth<br>: Court at No. 376 MD 2012 dated January<br>: 23, 2013. |
| v. | :<br>: ARGUED:   November 20, 2013 |
| SEAN DONAHUE AND THE OFFICE OF OPEN RECORDS | :<br>:<br>:<br>: |
| APPEAL OF:   OFFICE OF OPEN RECORDS | :<br>: |

**OPINION**

MR. JUSTICE BAER                                        DECIDED:   August 18, 2014

        In this matter, the Office of the Governor brought a declaratory judgment action in the Commonwealth Court, challenging the Office of Open Records' interpretation of 65 P.S. § 67.901, which addresses an agency's time frame for responding to written requests for documents made pursuant to the Right-to-Know Law.[1]   The Commonwealth

---

[1]      Providing in relevant part:

        Upon receipt of a written request for access to a record, an agency shall make a good faith effort . . . to respond as promptly as possible under the circumstances existing at the time of the request . . . . The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency.   If the agency fails to
(continued…)

Court granted the Office of the Governor's request for declaratory relief, and held that pursuant to 65 P.S. § 67.901, an agency must respond to a Right-to-Know Law records request within five business days of receipt of the request by the agency's respective open-records officer. After explaining the procedural history of this case, we first consider whether the Office of the Governor had standing to bring the declaratory judgment action and then whether the Commonwealth Court had subject matter jurisdiction in this matter. Finally, we address the Commonwealth Court's interpretation of 65 P.S. § 67.901 of the Right-to-Know Law. For the reasons that follow, we affirm the order of the Commonwealth Court.

I.

On March 7, 2012, Sean Donahue (Donahue) submitted to the Office of the Governor (OG) a Right-to-Know Law (RTKL) request via email, seeking various budgetary and employment records. OG's open-records officer did not receive the request until March 12, 2012; and five business days later, on March 19, 2012, the open-records officer proceeded to grant Donahue's request in part and deny the request in part.

On March 29, 2012, Donahue timely appealed to the Office of Open Records (OOR). OOR determined that Donahue's request was "deemed denied" because OG failed to respond to the request within a five business day period as required by 65 P.S. § 67.901. According to OOR, Section 901 affords an agency five business days to

(…continued)
    send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.

65 P.S. § 67.901.

respond to a RTKL request after receipt of the request by any employee of the agency. Instantly, OOR concluded that the five business day period for responding to Donahue's request began to run on March 7, the date on which an OG employee first received the request, and that the request was therefore "deemed denied" when OG failed to respond within five business days, which was by March 14.[2] The fact that OG's open-records officer did not receive the request until March 12 was immaterial to OOR's analysis. Notwithstanding its holding that the request was "deemed denied," OOR issued a final order upholding OG's substantive response and denying Donahue's appeal on the grounds that his records request was insufficiently specific.

Even though OG prevailed in the matter before OOR, it appealed OOR's final order to the Commonwealth Court, where it contested OOR's interpretation of Section 901 of the RTKL. OG contended that OOR wrongly concluded that an agency must respond to a RTKL request within five business days from the date any person within the agency receives such a request. To the contrary, OG argued that an agency, including it, has five business days to respond from the date its RTKL open-records officer receives the request for records. See 65 P.S. § 67.901 (stating that agencies must respond to record requests within "five business days from the date the written request is received by the open-records officer for an agency."). On July 2, 2012, the Commonwealth Court issued a *per curiam* order quashing OG's petition for appellate review. The Commonwealth Court held that OG lacked standing to appeal from the OOR order because OG was not

---

[2]    A deemed denial furnishes the requestor the right to file an appeal with the OOR within fifteen business days that the deemed denial becomes effective. See 65 P.S. § 67.1101(a).

"aggrieved" by the order, but merely disagreed with an issue decided against it regarding the time frame for responding to RTKL records requests.

In addition to appealing OOR's final order, OG simultaneously filed a declaratory judgment action in the Commonwealth Court's original jurisdiction, seeking a declaration that OOR misinterpreted Section 901 of the RTKL with respect to the commencement of the five business day period for responding to a RTKL request under Section 901.[3] As noted above, OG sought a holding from the court that the five business day period for an agency to respond to a RTKL records request does not start running until receipt of the request by an agency's open-records officer, as opposed to receipt by any employee of the respective agency.

In response to OG's petition for declaratory judgment naming OOR as respondent, OOR filed preliminary objections claiming, *inter alia*, that OG lacked standing to bring a declaratory judgment action against it because, as found by the Commonwealth Court with regard to OG's appeal in the Donahue matter, OG was not aggrieved by OOR's decision in Donahue and, therefore, lacked standing to bring an original jurisdiction action raising an issue decided therein. OOR also claimed that the Commonwealth Court lacked original jurisdiction to entertain OG's petition for declaratory relief, because the General Assembly specifically placed such matters in the judiciary's appellate rather than original jurisdiction through the statutory appeals process established in Chapter 13 of the RTKL. See 65 P.S. § 67.1101. Finally, OOR averred that OG's claim should be

---

[3]     OG named both OOR and Donahue as respondents in its declaratory judgment action. The Commonwealth Court dismissed Donahue as a party to the declaratory judgment action on the grounds that the Commonwealth Court is an improper forum for OG to file an original action against Donahue.

dismissed because the Commonwealth Court previously held in <u>Pennsylvania Gaming Control Bd. v. Office of Open Records</u>, 48 A.3d 503 (Pa.Cmwlth. 2012) ("<u>PGCB</u>") that an agency employee's receipt of a RTKL request triggered in that case the five business day period for responding to the request.

In a single-judge order, issued without opinion on August 28, 2012, the Commonwealth Court dismissed OOR's preliminary objections and proceeded to entertain OG's declaratory judgment action against OOR. Order of the Cmwlth. Ct., No. 376 M.D. 2012 (Aug. 28, 2012). As justification for its August 28, 2012 order dismissing OOR's preliminary objections, the Commonwealth Court cited without explanation the following two cases: <u>Pennsylvania State Educ. Ass'n *ex rel*. Wilson v. Commonwealth</u>, 50 A.3d 1263 (Pa. 2012) (permitting a teachers' union to sue OOR in declaratory judgment in the Commonwealth Court, where the teachers' union raised substantial constitutional issues and was not a party to the underlying RTKL request proceeding); and <u>Pennsylvania State Lodge v. Commonwealth</u>, 692 A.2d 609 (Pa.Cmwlth. 1997) (affirming the dismissal of a declaratory judgment action against the Pennsylvania Department of Labor and Industry where the plaintiff failed to allege any facts demonstrating that it suffered actual and immediate harm as a result of the department's actions).

In an order and supporting opinion filed January 23, 2013, a three judge panel of the Commonwealth Court granted OG its requested declaratory relief on the merits. <u>Commonwealth v. Donahue</u>, 59 A.3d 1165 (Pa.Cmwlth. 2013). Notably, the court expressly declined to address the issues of standing or jurisdiction raised by OOR in preliminary objections because these issues, in the court's view, were resolved by the

single-judge August 28 order denying the preliminary objections. Id. at 1167 n.5. Instead, the court proceeded directly to the merits.

The court rejected OOR's determination that an agency's five business day period for responding to a RTKL request under Section 901 commences when any agency employee receives the request. Specifically, the court held that OOR mischaracterized the Commonwealth Court's holding in PGCB to stand for the proposition that an agency employee's receipt of a RTKL request triggers the five business day period for responding to the request. Id. at 1169. In PGCB, an agency employee failed to forward a records request to an open-records officer and, allegedly, ignored the request after deciding, in a solitary act, that the request was defective. 48 A.3d at 504-05. The Commonwealth Court concluded in PGCB that under these circumstances the records request was "deemed denied," and held that, generally, written requests for records do not need to be specifically addressed to the agency's open-records officer or follow certain formatting guidelines in order to be valid. Id. at 508-10.[4] In its analysis of the case before us, the Commonwealth Court limited its holding in PGCB to the substance and form of RTKL requests, and refused to treat that case as dispositive with regard to the five day time frame for responding to a RTKL request under Section 901. Donahue, 59 A.3d at 1169. Ultimately, the court held that, according to the plain language of Section 901, an agency

---

[4]     This Court granted allocatur to consider this issue, namely whether the Commonwealth Court in PGCB erred by holding that RTKL records requests do not need to be either specifically addressed to the agency's open-records officer or follow certain formatting guidelines in order to be valid. PGCB, 48 A.3d 503 (Pa.Cmwlth. 2012), appeal granted 74 A.3d 1027 (Pa. 2013).

must respond to a written RTKL request within five business days of the request's receipt by the agency's designated open-records officer.   Id. at 1170.

II.

We first consider whether OG possessed standing to petition the Commonwealth Court for declaratory relief given OOR's interpretation of 65 P.S. § 67.901 enunciated in Donahue.   The issue of standing is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary.   Johnson v. Am. Standard, 8 A.3d 318, 326 (Pa. 2010).

OOR argues that the Commonwealth Court's decision granting declaratory relief should be vacated because OG suffered no harm as a result of OOR's final order in the Donahue case, and therefore lacked standing to sue OOR.   OOR reasons that just as the Commonwealth Court correctly found that OG lacked standing to appeal OOR's final order in Donahue because it was not aggrieved, the court should have also held that OG lacked standing to sue OOR in declaratory judgment where it sought the same relief (reversal of OOR's holding in the Donahue matter) for the same reason (that OOR's position was contrary to the statutory language).

Specifically, OOR argues that OG failed to meet the required elements for standing in its declaratory judgment action - namely, OG failed to demonstrate that its asserted interest was substantial, direct, and immediate.   See Fumo v. City of Philadelphia, 972 A.2d 487, 496 (Pa. 2009).   OOR avers that when it rendered its order in Donahue it did not engage in any sort of "rulemaking" as defined by the Commonwealth Attorneys Act, 71 P.S. §§ 732-101 et seq.; the Commonwealth Documents Law, 45 P.S. §§ 1201-1208;

[J-96-2013] - 7

or the Regulatory Review Act, 71 P.S. §§ 745.1 et seq. In the absence of official rulemaking affecting OG, OOR contends that OG did not suffer any harm.

OOR further argues that mere disagreement with a tribunal's legal reasoning or conclusions of law does not confer standing on a party. See ACS Enters. v. Norristown Borough Zoning Hearing Bd., 659 A.2d 651, 654 (Pa.Cmwlth. 1995) ("[A] prevailing party's disagreement with the legal reasoning or basis for a decision does not amount to a cognizable aggrievement necessary to establish standing."). OOR contends that any potential future adverse consequence of its interpretation of Section 901 is not sufficiently immediate to confer standing on OG for purposes of declaratory relief, and that OG must wait to make its challenge in a case where it is, in fact, aggrieved, at which point OG may pursue its remedy through the specific statutory scheme for review established in Chapter 13 of the RTKL. See Empire Coal Mining & Dev. v. Dep't of Env't Res., 623 A.2d 897, 900 (Pa.Cmwlth. 1993) (stating that the mere possibility of a future adverse judicial ruling is not sufficient to establish an immediate injury for purposes of standing); see also Yarmoski v. Lloyd, 531 A.2d 1169, 1171 (Pa.Cmwlth. 1987) (holding that declaratory judgments "are not to be entered in anticipation of events that may never occur."). Finally, OOR avers that its interpretation of Section 901, where OOR would require agencies to respond to record requests within five business days upon receipt by any agency employee, does not waste agency time or resources.

In response, OG concedes that the Commonwealth Court properly dismissed its petition for appellate review in Donahue after finding that OG lacked standing to appeal the OOR order. OG, however, contends that it nonetheless possessed standing to petition the Commonwealth Court for declaratory relief against OOR. OG observes that

standing to bring an original complaint exists where a party asserts a "discernible adverse effect" to an individualized interest. See William Penn Parking Garage, Inc. v. City of Pittsburgh, 346 A.2d 269, 282 (Pa. 1975) (plurality). Here, OG contends that, apart from the Commonwealth Court's declaratory order, OOR's decision in Donahue, where OOR announced its interpretation of Section 901, would force OG to alter both the manner in which it communicates with the public and the manner in which it litigates RTKL matters, thus imposing significant administrative burdens on OG.

In Pennsylvania, the doctrine of standing at issue in this matter is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. In re Hickson, 821 A.2d 1238, 1243 (Pa. 2003). For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been "aggrieved." Pittsburgh Palisades Park, LLC v. Commonwealth, 888 A.2d 655, 659 (Pa. 2005). As this Court explained in William Penn Parking Garage, "the core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge." 346 A.2d at 280-81. A party is aggrieved for purposes of establishing standing when the party has a "substantial, direct and immediate interest" in the outcome of litigation. Johnson, 8 A.3d at 329 (quoting Fumo v. City of Philadelphia, 972 A.2d 487, 496 (Pa. 2009)). A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative. Id.

Thus, while the purpose of the Declaratory Judgment Act, 42 Pa.C.S. § 7531 <u>et</u>. <u>seq</u>., is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered," the availability of declaratory relief is limited by certain justiciability concerns. 42 Pa.C.S. § 7541(a). In order to sustain an action under the Declaratory Judgment Act, a plaintiff must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy, as the courts of this Commonwealth are generally proscribed from rendering decisions in the abstract or issuing purely advisory opinions. <u>See</u> <u>Pittsburgh Palisades Park</u>, 888 A.2d at 659; <u>see</u> <u>also</u> <u>In re Hickson</u>, 821 A.2d at 1243.

OOR's contention that its newly announced interpretation of Section 901 does not waste agency time or resources or otherwise harm OG's interests borders on the frivolous. Pursuant to OOR's interpretation of Section 901, the five business day period for responding to a RTKL record request triggers upon receipt by any one of OG's employees, as opposed to the date of receipt by OG's respective open-records officer.[5]

---

[5] The impact of OOR's interpretation of Section 901 extends to every Commonwealth agency, which are all subject to the directives of the RTKL. <u>See</u> 65 P.S. §§ 67.302, .303, and .304 (providing that Commonwealth agencies, local agencies, legislative agencies, and judicial agencies shall provide public records in accordance with the RTKL); <u>see</u> <u>also</u> 65 P.S. § 67.102 (defining Commonwealth agencies, local agencies, legislative agencies, and judicial agencies for the purposes of the RTKL). Thus, while OG is not especially populous, we take judicial notice that OOR's interpretation of Section 901 would pose significant administrative challenges to agencies such as the Department of Corrections or the Department of Public Welfare, which collectively employ over 30,000 employees, any of whom, according to OOR, could serve as proper recipients of RTKL record requests for the purpose of triggering the time requirements of Section 901. <u>See</u> *2013 State Government Workforce Statistics*, PENNSYLVANIA OFFICE OF ADMINISTRATION, (continued…)

The effect of OOR's interpretation is to shorten the window for responding to RTKL record requests, thereby making it more difficult for OG to comply with the time requirements of Section 901. With less time to respond to record requests, the likelihood of deemed denials is higher, which will increase the number of RTKL matters that OG is forced to adjudicate with the OOR. See 65 P.S. § 67.1101. OG's allegation of harm is neither remote nor speculative, and as an administrative agency of the Commonwealth charged with complying with the statutory directives of the RTKL, OG possesses a cognizable interest in the outcome of this dispute that surpasses the interest of all citizens.

Moreover, OOR's insistence that OG is not aggrieved in the absence of OOR engaging in official rulemaking is misguided. Notably, the RTKL authorizes OOR to adopt regulations and issue advisory opinions to facilitate the implementation of the statute. See 65 P.S. § 67.504(a); 65 P.S. § 67.1310(a). While the Donahue decision is neither a regulation nor an advisory opinion, and although OOR's discussion of Section 901 in Donahue was essentially dicta (in that OOR upheld OG's dismissal of Donahue's record request for being insufficiently specific), OOR has proceeded to defend its interpretation of Section 901 in this appeal and has otherwise indicated that it intends to enforce Section 901 in accordance with the position it took in Donahue. Brief of OOR at 17-18. Thus, OOR's initial adjudication in this matter and subsequent advocacy serves to enunciate sufficiently its position on this issue which adversely, directly and immediately impacts OG.

---

(…continued)
http://www.oa.state.pa.us/portal/server.pt/community/workforce_statistics_(new)/20613/workforce_statistics_new/1054504 (last visited Jan. 24, 2014).

For these reasons we conclude that OG possesses standing to challenge in a declaratory judgment action OOR's interpretation of Section 901. Our position in this respect is consistent with similar decisions where we have recognized the justiciability of declaratory judgment actions seeking pre-enforcement review of an administrative agency's interpretation and enforcement of a governing statute. See Arsenal Coal Co. v. Commonwealth, 477 A.2d 1333 (Pa. 1984) (upholding a pre-enforcement challenge of agency regulations that had a direct and immediate effect on the party seeking declaratory relief); Bayada Nurses, Inc. v. Commonwealth, 8 A.3d 866 (Pa. 2010) (affirming the justiciability of a declaratory judgment action challenging an agency's interpretation of a provision in a governing statute). The fact that OOR has not engaged in official rulemaking with respect to its interpretation of Section 901 is a distinction without a difference. By setting forth and defending its interpretation of Section 901, OOR's conduct under the facts herein adversely, directly and immediately impacts OG, thus conferring on OG standing to challenge OOR's interpretation in declaratory judgment.

III.

Next, OOR argues that the Commonwealth Court lacked jurisdiction over OG's declaratory judgment action. OOR phrases the issue as "[w]hether the Commonwealth Court erred by finding it had jurisdiction over the Governor's original jurisdiction complaint alleging a misinterpretation of statutory law in the absence of any harm or constitutional question?" Brief of OOR at 4. We note that in so arguing, OOR conflates the distinct

notions of jurisdiction, standing, and exhaustion of statutory remedies. [6] Notwithstanding, we will summarize and respond to OOR's posited argument.

OOR claims that, in rendering its order of August 28, 2012, denying OOR's preliminary objections to jurisdiction, the Commonwealth Court erroneously relied upon Pennsylvania State Educ. Ass'n *ex rel*. Wilson v. Commonwealth, 50 A.3d 1263 (Pa. 2012) ("PSEA") for the proposition that a party aggrieved by OOR's interpretation of the RTKL may file an action for declaratory relief in the Commonwealth Court's original jurisdiction. See PSEA, 50 A.3d 1263 (Pa. 2012) (permitting a teachers' union to sue OOR seeking declaratory judgment in the Commonwealth Court, where the teachers' union raised substantial constitutional issues and was not a party to the underlying RTKL request proceeding). OOR asserts that our holding therein did not provide a grant of jurisdiction over it for purposes of the Declaratory Judgment Act generally, but rather was limited to circumstances where the administrative process involving OOR was inadequate to address a party's claim and where substantial constitutional issues were raised. OOR distinguishes PSEA from the instant case, pointing out that, unlike PSEA, this case does not involve a party left with no administrative or statutory process for pursuing a claim against OOR, and does not implicate a substantial constitutional issue.

---

[6] The terms "exhaustion of statutory remedies" and "exhaustion of administrative remedies" are at times used interchangeably in our decisional law. Compare Pennsylvania State Educ. Ass'n *ex rel*. Wilson v. Commonwealth, 50 A.3d 1263, 1276-77 (Pa. 2012); Kowenhoven v. Cnty. of Allegheny, 901 A.2d 1003, 1010-12 (2006); Pentlong Corp. v. GLS Capital, Inc., 820 A.2d 1240, 1245 (Pa. 2003); Borough of Green Tree v. Bd. of Prop. Assessments, Appeals & Review of Allegheny Cnty., 328 A.2d 819, 824 (Pa. 1974). Given that the alternative to OG's declaratory judgment action is a statutory remedy as provided for in the RTKL, rather than an administrative appeals process created by agency rules and regulations, for the sake of clarity we will utilize the term "exhaustion of statutory remedies" in our analysis of this issue.

OOR thus contends that the Commonwealth Court lacked subject matter jurisdiction to entertain OG's declaratory judgment action because OG did not raise an issue with constitutional overtones and, more importantly, because OG failed to exhaust its available statutory remedies.[7]  OOR would have OG disallowed from challenging its interpretation of Section 901 until a future case arises where OG is actually aggrieved, at which point, OG will be able to pursue fully its available statutory remedies, including appellate review as provided for in Chapter 13 of the RTKL.  See 65 P.S. §§ 67.1101, .1301.[8]

OG responds that the Commonwealth Court properly exercised its original jurisdiction in OG's declaratory judgment action because its petition for declaratory relief sought review of what OG viewed as an interpretation of the RTKL which would continuously place OG, as well as all other Commonwealth agencies subject to the RTKL,

---

[7]    OOR presumes that the rule requiring the exhaustion of statutory remedies operates to divest a court of its subject matter jurisdiction.  As we have recently noted, our decisional law is not clear as to whether the exhaustion of statutory remedies doctrine implicates a court's jurisdiction, or whether the rule is a prudential concern serving as a pre-requisite to a court's exercise of its jurisdiction.  See White v. Conestoga Title Ins. Co., 53 A.3d 720, 726 n.11 (Pa. 2012).  It is unnecessary to resolve this question in our disposition of this matter before the Court.

[8]    Additionally, OOR likens this matter to Marin v. Sec'y of Commonwealth., 41 A.3d 913 (Pa.Cmwlth. 2012) which this Court recently affirmed in a per curiam  order.  66 A.3d 250 (Pa. 2013).  OOR's reliance on Marin is misplaced, as Marin does not address the jurisdiction of the Commonwealth Court to entertain declaratory judgment actions over OOR.  Rather, in Marin an individual, allegedly attempting to register as a candidate in the 2010 congressional election, petitioned the Commonwealth Court for a declaratory judgment proclaiming Section 910 of the Election Code, 25 P.S. § 2870, unconstitutional, while also seeking an injunction barring OOR from allowing public access to petitioner's home address in accord with pertinent sections of that code.  The Commonwealth Court dismissed the portion of the action seeking to hold Section 910 of the Election Code unconstitutional, concluding that OOR had no role in the enactment or enforcement of the Election Code, and was therefore neither a necessary nor appropriate party to the case. Marin, 41 A.3d at 915.

at jeopardy. Specifically, OG asserts that OOR redefined the limits of its own jurisdiction to entertain RTKL appeals when it clarified the time frame within which an agency must respond to a RTKL record request, given that OOR lacks jurisdiction over RTKL appeals until a request has been "deemed denied." See 65 P.S. § 67.1101. OG thus characterizes its petition for declaratory relief as an action seeking to define the proper reach of OOR's authority in RTKL matters, which, according to OG, properly falls within the Commonwealth Court's original jurisdiction.

Before turning to OOR's arguments, we initially reject OG's argument that OOR's announced interpretation of Section 901 purporting to clarify the time frame within which an agency must respond to RTKL record requests impermissibly redefined the scope of OOR's authority and thus widened the breadth of its jurisdiction over RTKL matters. Various provisions of the RTKL clearly confer upon OOR the authority to construe RTKL provisions and to decide RTKL matters. See 65 P.S. § 67.504 (authorizing OOR to "promulgate regulations relating to appeals involving . . . Commonwealth agenc[ies]."); 65 P.S. § 67.1310(a)(2) (directing OOR to issue advisory opinions); 65 P.S. § 67.1310(a)(5) (granting OOR authority to review and decide appeals of decisions by Commonwealth agencies). Whether OOR advanced a correct interpretation of Section 901 in deciding the Donahue matter is a separate question with no jurisdictional overtones related to OOR's interpretation and enforcement of the RTKL generally.

We next turn to OOR's argument that, apart from an inadequate statutory or administrative remedy and the presence of substantial constitutional concerns, a declaratory judgment action addressed to the Commonwealth Court's original jurisdiction

is an improper vehicle for challenging OOR's interpretation of the RTKL. PSEA serves as the basis of OOR's argument.

In PSEA a labor union representing public school employees filed an original jurisdiction action against OOR, seeking preliminary and permanent injunctions prohibiting the disclosure of the school employees' personal information after OOR ordered the release of these records pursuant to a series of RTKL requests filed with various school districts across Pennsylvania. 50 A.3d at 1266. The teachers' union premised its claims upon the right to due process. Notably, the teachers' union was not a party to the RTKL requests adjudicated before the OOR, and therefore had no administrative or judicial method under the RTKL by which to seek redress for its members' grievances. Id. at 1275.

While noting the general rule requiring the exhaustion of statutory remedies, this Court in PSEA held that a declaratory judgment action against OOR was appropriate under the circumstances, where the union raised substantial due process concerns and lacked a reliable administrative or alternative judicial remedy. Id. at 1275-76. Moreover, notwithstanding that the OOR is a quasi-judicial tribunal, we further held that it was an indispensable and proper party to an action brought under the Declaratory Judgment Act, 42 Pa.C.S. § 7541(a), seeking an order regarding its interpretation of the RTKL, particularly when the aggrieved party lacked an adequate administrative or alternative judicial forum for obtaining relief, as was the case in PSEA. Id. at 1277.[9]

---

[9] Unlike in PSEA, there is no argument posited herein that, assuming the Commonwealth Court's jurisdiction and OG's standing, OOR is not an indispensable party to this dispute, as indeed it obviously is.

OOR's attempt to limit the Commonwealth Court's jurisdiction over it to the facts of PSEA understates the reach of the Commonwealth Court's original jurisdiction over a Commonwealth agency like OOR. The Commonwealth Court has original jurisdiction over any action brought against the "Commonwealth government," as well as the authority to grant declaratory relief to the same. 42 Pa.C.S. §§ 761(a), 7541(a); Vine v. Commonwealth, 9 A.3d 1150, 1165 (Pa. 2010). The Judicial Code defines the "Commonwealth government" as including " … the departments, boards, commissions, authorities and officers and agencies of the Commonwealth." 42 Pa.C.S. § 102. The OOR, as a Commonwealth agency, plainly falls within the statutory definition of "Commonwealth government" and is therefore subject to the original jurisdiction of the Commonwealth Court in any action properly brought against it. See 65 P.S. § 67.1310 (placing the Office of Open Records in the Department of Community and Economic Development, charged with implementing and enforcing the RTKL); see also Vine, 9 A.3d at 1165 (jurisdiction "relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs"). The fact that OG is bringing a declaratory judgment action against the OOR, a Commonwealth agency, to challenge its interpretation of Section 901, places this matter squarely within the scope of the Commonwealth Court's original jurisdiction.

We therefore reject OOR's contention that the absence of a substantial constitutional issue in this action deprives the Commonwealth Court of jurisdiction. While in PSEA this Court expressly held that a declaratory judgment action against OOR in the Commonwealth Court's original jurisdiction was appropriate where the aggrieved

party lacked an available administrative remedy and raised a substantial constitutional issue, we never indicated that the facts of PSEA represented the extent of the Commonwealth Court's jurisdiction. See PSEA, 50 A.3d at 1275-77. To the contrary, in PSEA we cited with approval Pentlong Corp. v. GLS Capital, Inc., 820 A.2d 1240 (Pa. 2003) (superseded by statute on other grounds, 53 P.S. § 7106) where we endorsed a "relatively flexible" approach in determining whether the Commonwealth Court should entertain a declaratory judgment action when the aggrieved party possesses an alternative legal remedy. PSEA, 50 A.3d at 1277; Pentlong Corp., 820 A.2d at 1245-46, 1248 n.16 (citing Borough of Green Tree v. Bd. of Prop. Assessments, 328 A.2d 819, 824 (Pa. 1974). Specifically, in Pentlong Corp., this Court, notwithstanding the absence of a substantial constitutional question, sanctioned the exercise of jurisdiction by the Commonwealth Court over a declaratory judgment action involving allegations of fraud and unjust enrichment against a private entity engaged in municipal tax lien collections. Pentlong Corp., 820 A.2d at 1248 n.16.

We further reject OOR's contention that the rule requiring the exhaustion of statutory remedies effectively precludes OG from challenging OOR's interpretation of Section 901 by means of a declaratory judgment action brought in the Commonwealth Court's original jurisdiction. While it remains unclear whether the rule requiring the exhaustion of statutory remedies is jurisdictional or prudential (see supra note 7), even assuming, *arguendo*, one cast an exhaustion discussion in jurisdictional terms, there is no doubt a court may properly exercise its jurisdiction in the face of an existing legal or statutory remedy when that remedy is either inadequate or incomplete. Pentlong Corp., 820 A.2d at 1245. Specifically "[w]here, for instance, a legal remedy would result in a

multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution, this Court has found the legal remedy to be inadequate." Id. at 1245-46; Kowenhoven v. County of Allegheny, 901 A.2d 1003, 1010 (Pa. 2006).

Here, OOR, an administrative agency, proffered an interpretation of Section 901 of the RTKL in its Donahue decision that immediately and detrimentally impacted OG. Nonetheless, OOR challenged OG's standing to appeal from OOR's Donahue decision because, as the Commonwealth Court noted, OG was the prevailing party therein.[10] OOR now argues that OG must first exhaust its statutory remedies under the RTKL before pursuing declaratory relief in the Commonwealth Court. OOR essentially advocates that OG await the following scenario: a future RTKL requestor challenges OG, or another entity subject to the RTKL, for violating OOR's interpretation of Section 901 articulated in Donahue; OOR resolves the dispute in favor of the requestor, consistent with Donahue; and OG, or the alternative entity, challenges OOR's interpretation of Section 901 before the Commonwealth Court in its appellate capacity. Meanwhile, OOR presumably expects OG and every other Commonwealth agency to act in accord with its Donahue decision, and thus face the direct and immediate administrative burden of complying with this pronouncement, unless and until the aforementioned scenario unfolds.

---

[10] As it is unnecessary to the disposition of this present matter, we take no position with regard to the Commonwealth Court's order quashing OG's direct appeal from the Donahue decision, where the Commonwealth Court relied on its precedent in Ridgway's Magnetics Co. v. Commonwealth, 577 A.2d 969 (Pa.Cmwlth. 1990) (holding that a prevailing party's mere disagreement with a tribunal's legal reasoning does not grant standing for purposes of appellate review under Pa.R.A.P. 501). Order of the Cmwlth. Ct., No. 376 M.D. 2012 (July 2, 2012).

It is precisely under such circumstances, where a party is in need of relief from "uncertainty and insecurity with respect to rights, status, and other legal relations," and where a legal or administrative remedy is inadequate, that declaratory relief is warranted. See 42 Pa.C.S. §7541(a); Kowenhoven, 901 A.2d at 1011. As previously noted, OOR's construction of Section 901 announced in Donahue affects numerous parties, all of whom are burdened with the task of either complying with OOR's interpretation or challenging the same when they are found to have violated it. Accordingly, declaratory relief is appropriate in the Commonwealth Court's original jurisdiction to avert the potential "multiplicity of duplicative lawsuits" with regard to the same issue OG raised in its declaratory judgment action. See generally Pentlong Corp., 820 A.2d at 1245-46; Kowenhoven, 901 A.2d at 1011.

Moreover, as we recognized in Borough of Green Tree, the rule requiring the exhaustion of statutory remedies need not apply where "the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision." Borough of Green Tree, 328 A.2d at 824 (internal quotation marks omitted). Given that OOR has stated its position with regard to Section 901 in its Donahue decision and defended the same on appeal to this Court, it is unlikely that awaiting formal consideration of the question in a future controversy between OOR and OG will provide further insight. See Id.

Thus, contrary to OOR's contention, OG's declaratory judgment action addressed to the Commonwealth Court's original jurisdiction was a proper vehicle for challenging OOR's interpretation of the RTKL. Our position is consistent with other decisions where we have permitted declaratory judgment actions brought in the Commonwealth Court's

original jurisdiction against Commonwealth agencies acting within their adjudicatory or regulatory capacities. See Arsenal, 477 A.2d 1333 (declaratory judgment action brought against the Department of Environmental Resources seeking to enjoin the agency from implementing regulations); Rendell v. Pennsylvania State Ethics Comm'n, 983 A.2d 708 (Pa. 2009) (declaratory judgment action against the Pennsylvania State Ethics Commission challenging an advisory opinion announcing the agency's interpretation of a governing statute); PPL Generation, LLC v. Commonwealth, 986 A.2d 48 (Pa. 2009) (declaratory judgment action against the Department of Environmental Protection seeking to invalidate the agency's emissions regulation promulgated pursuant to the Pennsylvania Air Pollution Control Act, 35 P.S. §§ 4001-4015); Bayada, 8 A.3d 866 (declaratory judgment action brought against the Department of Labor and Industry challenging the agency's proffered interpretation of a provision in the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101-333.115).

Finally, as with our discussion of OG's standing, we view it immaterial that OOR's path to its construction of Section 901 of the RTKL was first its adjudication of a case before it as a quasi-judicial tribunal, and then its position as an advocate. Of consequence is that OOR has adopted an interpretation of the statute in question and stated its intention to apply that interpretation prospectively to the apparent detriment of OG (as well as other Commonwealth agencies). Under these circumstances, we conclude that the Commonwealth Court properly exercised its original jurisdiction over OOR in this matter.

IV.

With standing and jurisdiction concerns aside, we turn to our analysis of when the five business day period for responding to RTKL record requests begins pursuant to Section 901 of that act. OOR contends that the Commonwealth Court erred as a matter of law by interpreting Section 901 to provide that the five business day period for responding to RTKL record requests does not begin to run until the agency's respective open-records officer receives the request. First, citing to the Commonwealth Court's holding in PGCB, OOR argues that the court failed to follow its precedent establishing that an agency employee's receipt of a RTKL request triggers the five business day period for responding under Section 901. See Pennsylvania Gaming Control Bd. v. Office of Open Records, 48 A.3d 503 (Pa.Cmwlth. 2012) ("PGCB") appeal granted, 74 A.3d 1027 (Pa. 2013). In PGCB, the Commonwealth Court treated a RTKL request as "deemed denied" when an agency employee failed to forward the request to an open-records officer. Id. OOR contends that the outcome should be no different in the instant case.

According to OOR, the plain language of Section 901 requires that an agency respond to all RTKL record requests within five business days of receipt by any agency employee. OOR points to the first and last sentence of Section 901 which refer to "an agency's" receipt and response to RTKL records requests, and argues that the language necessarily implies that the five business day period for responding to a records request begins to run upon receipt by any employee of an agency. Moreover, OOR argues that the Commonwealth Court adopted an overly narrow interpretation of Section 901, specifically with regard to the language from Section 901 that reads: "[t]he time for respon[ding to a records request] shall not exceed five business days from the date the written request is received by the open-records officer for an agency." According to

OOR, this language simply means that if the agency's open-records officer is the first employee to receive a RTKL records request, then the officer's response is not to exceed five business days.

OOR further argues that its interpretation of Section 901 is the only one that gives full effect to the express language of the RTKL. OOR notes that Section 703 of the RTKL contemplates the receipt of requests by any agency employee, because it directs such employees to forward all requests for records to the respective agency's open-records officer.[11] OOR further notes that Section 502 instructs open-records officers to "compute the day on which the five business day period under Section 901 will expire," and contends that the open-records officer should base the computation on when the first agency employee received the RTKL request.[12]

---

[11] Section 703 provides in relevant part:

> A written request must be addressed to the open-records officer designated pursuant to section 502. Employees of an agency shall be directed to forward requests for records to the open-records officer.

65 P.S. § 67.703.

[12] Section 502 provides in relevant part:

> (b) Functions. -
> …
> > (2) Upon receiving a request for a public record, legislative record or financial record, the open-records officer [for an agency] shall do all of the following:
> > > (i) Note the date of receipt on the written request.
> > > (ii) Compute the day on which the five-day period under section 901 will expire and make a notation of that date on the written request.

(continued…)

OOR places significance on the fact that various sections of the RTKL refer to an agency's determination of whether to grant or deny access to records as the "agency's response," as opposed to the "open-records officer's response." See 65 P.S. §§ 67.706, .903, .904, .905, .1101, and .1303. OOR contends that an open-records officer's duties are merely administrative while it is the agency that performs all critical decision-making functions with respect to the RTKL, and reasons that the five business day period for responding to a RTKL request necessarily begins to run when any agency employee first receives the request.

Finally, OOR argues that the Commonwealth Court's interpretation of Section 901 runs counter to the overriding legislative intent in enacting the RTKL, which is government transparency and the speedy resolution of requests for information. See Levy v. Senate, 65 A.3d 361, 368 (Pa. 2013). OOR warns that, pursuant to the Commonwealth Court's interpretation of Section 901, an agency will be inclined to act in bad faith by delaying the transmission of RTKL requests from its employees to its open-records officer. Moreover, OOR contends that the Commonwealth Court's holding will inhibit parties requesting records from knowing when the fifteen day window for appealing from a deemed denial begins to run, since they will have no reliable method for determining when an agency's open-records officer first received a record request. See 65 P.S. § 67.901 (stating that when an agency fails to respond timely to a RTKL record request, the request is "deemed denied"); 65 P.S. § 67.1101 (conferring the right to file an appeal with the OOR within fifteen days of either a denial or a deemed denial).

---

(…continued)
65 P.S. § 67.502.

In response, OG contends that the plain language of Sections 901, 703, and 502 of the RTKL establish that agencies must respond to RTKL requests within five business days from the date the written request is received by an open-records officer for the agency, as opposed to any agency employee. OG argues that OOR's interpretation of Section 901 would require a result that is both impossible in execution and absurd in implementation. OG warns that if Section 901 is interpreted as to require an agency response within five business days of receipt by any agency employee, then agencies will be confronted with the impossible task of averring that no agency personnel are in receipt of a request. Finally, OG submits that if OOR's interpretation of Section 901 is upheld, agencies will experience "shotgun" RTKL record requests where duplicate requests are submitted to multiple agency employees. Accordingly, OG would have us affirm the Commonwealth Court's grant of declaratory relief.

As our analysis involves interpreting a provision from the RTKL, we necessarily begin by considering the Statutory Construction Act of 1972. 1 Pa.C.S. § 1501 et seq. The Statutory Construction Act directs that the object of all interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. § 1921(a); Chanceford Aviation Properties, LLP v. Chanceford Twp. Bd. of Supervisors, 923 A.2d 1099, 1104 (Pa. 2007). Generally, the best indicator of legislative intent is the plain language of the statute. Walker v. Eleby, 842 A.2d 389, 400 (Pa. 2004). In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S. §

1921(b); Commonwealth v. Conklin, 897 A.2d 1168, 1175 (Pa. 2006). Only "[w]hen the words of the statute are not explicit" may a court resort to the rules of statutory construction including those provided in 1 Pa.C.S. § 1921(c);[13] Chanceford, 923 A.2d at 1104. The statute must "be construed, if possible, to give effect to all its provisions," so that no provision is reduced to mere surplusage. 1 Pa.C.S. § 1921(a); Walker, 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

The RTKL requires all agencies to designate an open-records officer, who is tasked with handling RTKL record requests. 65 P.S. § 67.502(a)(1), (b). The RTKL further obliges agency employees who receive RTKL requests to forward the requests to the agency's open-records officer. 65 P.S. § 67.703. While there is no specified time frame for forwarding a request to the agency's open-records officer, Section 901 of the RTKL directs agencies to make a good faith effort to respond as promptly as possible, and in any event to respond no later than "five business days from the date the written

---

[13] The factors in § 1921(c) are:

(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

request is received by the open-records officer for an agency." 65 P.S. § 67.901. Section 901 provides more fully:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort . . . to respond as promptly as possible under the circumstances existing at the time of the request . . . . **The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency**. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.

Id. (emphasis added).

As noted above, in construing a statute, a reviewing court's objective is to discern the intent of the legislature, which is best indicated by the plain language of the statute. The language of this passage is clear and unambiguous. Simply put, agencies must respond to RTKL record requests within five business days after the agencies' respective open-records officer first receives the request. The five business day period plainly begins when the open-records officer receives a request. Because the directive in Section 901 is neither vague nor subject to more than one reasonable interpretation, there is no need to look beyond the plain meaning of the statute and resort to other indicia of legislative intent. See 1 Pa.C.S. § 1921(c). The Commonwealth Court thus properly concluded that Section 901 of the RTKL requires an agency to respond to a written request for records within five business days of the request's receipt by an agency's open-records officer.

OOR's insistence that Section 901 requires agencies to respond to RTKL record requests within five business days of receipt by any agency employee has no basis in the text of the statute. To defend its interpretation, OOR looks, in isolation, at the first and last sentences of Section 901 which refer to "an agency's" receipt and response to RTKL

records requests, and argues that the language necessarily implies that the five business day period for responding to a records request begins to run upon receipt by any agency employee. OOR's interpretation, however, does not provide a satisfactory explanation of the language in Section 901 that specifically directs agencies to respond within "five business days from the date the written request is received by the open-records officer for an agency." While OOR acknowledges that the plain language of Section 901 affords an agency's open-records officer five business days to respond to a RTKL records request, OOR adds, without any basis, that this holds true only if the officer is the first agency employee to receive the request. Because OOR's interpretation does not give effect to all the language contained in Section 901, and otherwise inserts language that does not appear in the text of the statute, we reject OOR's construction of Section 901. See 1 Pa.C.S. § 1921(a), 1922(2).

We also reject OOR's attempt to analogize this case to the Commonwealth Court's prior holding in PGCB. In PGCB, an agency employee failed to forward a records request to an open-records officer, supposedly ignoring the request after deciding, in a solitary act, that the request was defective. 48 A.3d at 505. The Commonwealth Court in PGCB concluded that the records request was "deemed denied" because the agency refused to respond, and further held that written requests for records do not need to be specifically addressed to the agency's open-records officer or follow specific formatting guidelines in order to be valid. Id. at 508-10. While the outcome in PGCB (a deemed denial) is consistent with OOR's contention that the five business day response period under Section 901 commences when any agency employee receives a records request, the cases are factually distinct. The issues raised in PGCB and the Commonwealth

Court's analysis therein did not focus on the language of Section 901 pertaining to the five business day period for responding to RTKL requests. Indeed, the Commonwealth Court only mentioned Section 901 in passing. Id. at 511. Because of the different factual matrixes and given that the interpretation of Section 901 was not at issue in PGCB, the Commonwealth Court's holding in that case simply has no bearing on our analysis in the one before us.

Finally, we reject the various policy arguments that OOR raises in opposition to the Commonwealth Court's plain language reading of Section 901. Primarily, OOR argues that if the five business day response period under Section 901 commences upon receipt of a written record request by an agency's open-records officer, a Commonwealth agency like OG will be inclined to act in bad faith by delaying the transmission of RTKL requests from its employees to its open-records officer, and thus frustrate the goal of the RTKL to facilitate the speedy resolution of requests for information.

We presume that Commonwealth agencies will act in good faith in discharging their statutory duties under the RTKL. See In re Redevelopment Auth. of Philadelphia, 938 A.2d 341, 345 (Pa. 2007) (citing Robinson v. City of Philadelphia, 161 A.2d 1, 5 (Pa. 1960) ("Public officials are presumed to have acted lawfully and in good faith until facts showing the contrary are averred, or in a proper case averred and proved."); In re Condemnation by Urban Redevelopment Auth. of Pittsburgh, 594 A.2d 1375, 1380 (Pa. 1991) (noting that a city planning commission, like a government agency, is "presumed to perform its duties in good faith and according to law."). Section 703 of the RTKL obliges agency employees who receive RTKL record requests to forward the requests to the agency's open-records officer. Further, Section 901 specifically directs agencies to

make a good faith effort to respond to RTKL requests as promptly as possible, and in any event to respond within "five business days from the date the written request is received by the open-records officer."  The fact that the RTKL leaves Commonwealth agencies a measured amount of discretion in handling RTKL record requests before the requests reach the agency's open-records officer does not alter our presumption that Commonwealth agencies will follow the directives in Section 901 and make a good faith effort to respond promptly to RTKL requests, in keeping with the RTKL's purpose of facilitating the speedy resolution of record requests submitted to government bodies.

OOR also argues that the Commonwealth Court's plain language reading of Section 901 will inhibit RTKL requestors from exercising their statutory appeal rights under Section 1101 in the event that a deemed denial occurs.  Specifically, OOR contends that the Commonwealth Court's holding will deny RTKL requestors a reliable method for determining when their statutory appeal rights under Section 1101 are triggered in the event that a deemed denial occurs.  Section 1101 confers upon requestors the right to file an appeal with the OOR within fifteen days of either a denial or a deemed denial; while according to Section 901, a deemed denial occurs when an agency fails to respond timely to a RTKL record request.  Compare 65 P.S. §§ 67.1101 and .901.  As OOR points out, if pursuant to Section 901, the five business day period for responding to RTKL record requests begins to run from the date that a request is submitted or forwarded to an agency's open records officer, then a requestor cannot know with certainty (absent inquiry) when a deemed denial may occur and,

correspondingly, when the fifteen day window for appealing from a deemed denial will open and close.[14]

We recognize that the interplay between Section 901 and Section 1101 of the RTKL highlights what appears to be a gap in the statutory scheme for processing RTKL record requests and appeals.[15] However, while it appears that the RTKL may not sufficiently apprise requestors of the timing of their statutory appeal rights under Section 1101, this does not serve as a valid basis for rejecting the plain meaning of Section 901. See Walker, 842 A.2d at 400 (the best indicator of legislative intent is the plain language of the statute). Indeed, notwithstanding the merits of either policy argument advanced by OOR, we cannot re-construe Section 901 because we believe an alternative interpretation would address certain unintended consequences of the law. See 1 Pa.C.S. § 1921(b) (when the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its

---

[14]     In its opinion, the Commonwealth Court notes that Section 502 of the RTKL directs open-records officers who are in receipt of a request for public records to note the date that a record request is received for the purpose of computing the five day period under Section 901. Donahue, 59 A.3d at 1169 n.6. However, the fact that the open-records officer notes the date of receipt on the record request does not aid the requestor in readily determining when a deemed denial might occur and when his or her statutory appeal rights are triggered under Section 1101.

[15]     Indeed this is not the first time that this Court has noted a gap in the administrative and judicial review process existing in the RTKL. See PSEA, 50 A.3d at 1278-81 (Castille, C.J., concurring); SWB Yankees LLC v. Wintermantel, 45 A.3d 1029 (Pa. 2012).

spirit"). We leave the task of rectifying perceived deficiencies in the statutory scheme of the RTKL to the legislature.[16]

In light of the foregoing, we conclude that pursuant to the plain language of Section 901 of the RTKL, Commonwealth agencies must respond to RTKL record requests within five business days of the request's receipt by the agency's open-records officer. The order of the Commonwealth Court is therefore affirmed. Jurisdiction relinquished.

Messrs. Justice Saylor, Eakin, McCaffery and Stevens join the opinion.

Mr. Chief Justice Castille files a concurring opinion.

Madame Justice Todd files a concurring opinion.

Mr. Justice Stevens files a concurring opinion.

---

[16] To the extent the RTKL is unclear and in need of interpretation, the legislature delegated to OOR authority to promulgate regulations and issue advisory opinions, consistent with the act. See 65 P.S. § 67.504(a); 65 P.S. § 67.1310(a). OOR seems, however, to desire to employ these functions as well as its adjudicatory role to alter its legislative underpinning, when it dislikes it. This it cannot do. If OOR disagrees with the legislature's intentions as set forth in the RTKL, its only remedy is to seek an amendment to that act.