IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of St. Clair,               :
           Petitioner        :
                                 :
        v.                    :
                                 :
Department of Environmental   :
Protection,                   :    No. 1026 C.D. 2016
           Respondent    :    Argued: April 20, 2017


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE JOSEPH M. COSGROVE, Judge (**P**)
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE             FILED: July 7, 2017


Borough of St. Clair (Petitioner) petitions for review of an order of the Environmental Hearing Board (Board) which upheld the issuance of a solid waste management permit to Blythe Township (Township) and dismissed Petitioner's appeal. Upon review, we affirm.

On February 26, 2004, the Township filed with the Department of Environmental Protection (Department) a Phase I and Phase II application for a solid waste management permit for development of the Blythe Recycling and Demolition Site (BRADS) landfill pursuant to the Solid Waste Management Act (SWMA).[1] In furtherance of the goal of developing and operating the BRADS

---

[1] Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101-6018.1003.

landfill, the Township entered into an agreement with FKV, LLC (FKV) to provide technical and financial expertise to the Township, assist in securing all necessary approvals, and market the BRADS landfill to potential customers. The site of the proposed BRADS landfill is approximately 400 acres and located on an abandoned coal mine. The BRADS landfill would be comprised of six cells.

After twice denying the Township's application, the Department issued an approval of the environmental assessment review on August 5, 2011, concluding the Township had demonstrated the benefits of the project clearly outweighed the potential harms it might cause. Petitioner, a neighboring borough, filed an appeal of the permit issuance with the Board and a trial was held in September 2013. While the majority of Petitioner's objections were rejected, the matter was remanded for further review of the proposed Cell 4 area after additional mine subsidence data was submitted by the Township, for reassessment of the Township's nuisance minimization and control plan, and for a reevaluation of Phase I to ensure that the revised analyses did not change the Department's ultimate conclusion on the environmental assessment. Following review of the supplemental reports provided by the Township, the Department reissued the solid waste permit for the BRADS landfill. Petitioner once more appealed the issuance of the permit and a trial was held in February 2016. The Board upheld the issuance of the permit by the Department and dismissed Petitioner's appeal. This appeal followed.[2]

---

[2] Our review of a decision of the Board is limited to determining whether the Board committed an error of law and violated constitutional rights, or whether substantial evidence supports its findings of fact. *Joseph J. Brunner, Inc. v. Department of Environmental Protection*, 869 A.2d 1172 (Pa. Cmwlth. 2005).

As set forth in Petitioner's brief, the issues before this Court are as follows:

1. Was the Department's interpretation of the harms-benefits regulation clearly erroneous and inconsistent with the plain language of the regulations, was it contrary to the law or was it made in bad faith, arbitrarily executed, or a manifest abuse of discretion?

2. Did the issuance of the landfill permit unlawfully give [FKV], a private entity, authority to make management decisions concerning landfill operation or unreasonably limit permittee's authority to make such decisions?

3. Was the EHB's finding relative to the excavation of a coal vein not in accordance with the laws and was its finding of fact necessary to support its adjudication not supported by substantial evidence?

(Petitioner's Brief at 4.)

## DISCUSSION

Petitioner first argues the Department erroneously interpreted the Harms/Benefit regulation and a fair reading of the plain regulatory language requires consideration of potential economic harm.

The Harms/Benefit test is set forth in Department regulations and was held constitutional in *Eagle Environmental II, L.P. v. Department of Environmental Protection,* 884 A.2d 867 (Pa. 2005). The pertinent regulation, outlined in 25 Pa. Code § 271.127, requires first that the permit application include a detailed analysis of the potential impact of the proposed facility on the environment and public health and safety, including traffic, aesthetics, air quality, water quality, stream flow, fish and wildlife, plants, aquatic habitat, threatened or endangered species, water uses, land use, and municipal waste plans. 25 Pa. Code

3

§ 271.127(a). The applicant is to consider a number of enumerated features such as scenic rivers, recreational river corridors, local, State, and Federal forests and parks, and any other features deemed appropriate by the Department or the applicant. *Id.*

Once the investigatory aspects of subsection (a) have been satisfied, the applicant must, under subsection (b), describe any known and potential environmental harms, provide mitigation plans, and identify any known or potential unmitigated environmental harms. 25 Pa. Code § 271.172(b). The Department then reviews the assessment and mitigation plans to determine whether there are additional harms and whether all known and potential environmental harms will be mitigated. *Id.*

After the Department determines the mitigation measures are adequate, the next step in the assessment is the Harms/Benefits Test set forth in subsection (c). In this step, the applicant must demonstrate the benefits of the project to the public clearly outweigh the known and potential environmental harms. 25 Pa. Code § 271.127(c). Benefits of the project shall consist of social and economic benefits that remain after taking into consideration the known and potential social and economic harms of the project and shall also consist of the environmental benefits, if any. *Id.*

Petitioner argues the Harms/Benefits analysis performed by the Department did not consider any harm that could result if the BRADS landfill did not prove profitable or financially viable. The Department previously rejected the Township's application on the basis that the potential costs and liabilities to the Township was a harm that outweighed its many benefits. The Department subsequently reconsidered this decision and, in its letter approving the application,

4

removed "potential costs/liabilities" as a potential harm of the project. (Reproduced Record (R.R.) at 352a-365a.) William Tomayko, Waste Program Manager for the Department's Northeast Region, testified as follows in regards to the change in Department interpretation of the regulation:

> [W]e became concerned that the Department didn't have any authority to make judgment on whether or not a company, or a township here in this case, can successfully operate a business. Our regulations don't have any kind of requirement that they need to submit a business plan, or that the Department needs to determine whether or not the company or the applicant can make a profit… We didn't think we could defend it and so we started having discussions about what happens.

(R.R. at 304a-305a.)

Removal of that factor from the Department's analysis of the environmental assessment "turned it to an approval." (R.R. at 306a.)

In its June 6, 2016 order and opinion, the Board found the Department's interpretation to be reasonable and consistent with the regulatory language. (R.R. at 25a.) The regulation does not facially require a review of the landfill's business plan and existing case law does not require such a review. *Id.* at 25a-26a.

The Township, as Intervenor, asserts that Petitioner's position would require an amendment of the regulations to require Department review of "financial documents, business plans, pro formas, cost and earnings projections, and financing mechanisms" to determine whether a project can obtain financing, whether a project will be financially successful or fail, and whether the consequences of such failure constitute an economic harm to the permittee sufficient to warrant a denial. (Intervenor's Brief at 19.)

5

Our well-settled precedent establishes that courts defer to an administrative agency's interpretation of its own regulations unless that interpretation is unreasonable. *Department of Environmental Protection v. North American Refractories Co.*, 791 A.2d 461, 464 (Pa. Cmwlth. 2002). The task of the reviewing court is limited to determining whether the agency's interpretation is consistent with the regulation and with the statute under which the regulation was promulgated. *Id.* Contrary to the assertions of Petitioner, the Department did consider economic harms when reviewing the application. Specifically, the Department weighed harms and potential harms associated with air quality, uncompensated losses to local governments, quality of the environment, traffic, visual impact, and wetlands. (R.R. at 353a-357a.) While *Eagle Environmental II* does hold that a consideration of economic harm is within the authority of the SWMA, *Eagle Environmental II*, 884 A.2d at 879, it does not stand for the proposition that the Department perform an in-depth analysis of the financial aspects of the underlying project. We are aware of no requirement that the Department first determine whether a project can be a going concern prior to granting a permit under the SWMA. Therefore, we conclude the Department's interpretation of the Harms/Benefit Test is reasonable and we discern no error of law, bad faith, arbitrary execution, or abuse of discretion in that regard.

Petitioner next argues the contract between FKV and the Township gives FKV impermissible powers in operating the facility. FKV does not have a permit to operate the BRADS landfill. Petitioner asserts the provisions of the agreement with the Township essentially grant FKV operational rights over the BRADS landfill and, therefore, it must have a permit.

6

Petitioner's argument is based on the following provisions in Section 11 of the agreement, which require written approval of both parties for the following:

1. Acquisition or disposition of any real property or interests therein for the facility;

2. Determination of any hired operator of the facility;

3. Determination of any hired marketing and/or sales agent for the facility;

4. Financing for the facility;

5. Mortgaging or the placing or suffering the placing of any encumbrance on the facility; and

6. Determination of an annual operating budget for the facility, including, without limitation, capital expenditures.

(R.R. at 314a-315a.)

These provisions, according to Petitioner, allow FKV to exercise control over the Township for purposes of using government powers, including the power to avoid zoning, subdivision, and land development filings, as well as the power to apply for a Department permit and the power to finance construction of same. In response, both the Department and the Township argue Petitioner lacks standing, and that this issue was previously litigated in *Borough of St. Clair v. Blythe Township,* (Pa. Cmwlth., No. 1169 C.D. 2014, filed April 10, 2015), 2015 WL 5432784. While unreported, this opinion clearly impacts the present case. There also, Petitioner asserted the Agreement between the Township and FKV was void and unenforceable because the Township unconstitutionally delegated its municipal functions to FKV. This Court concluded the trial court was correct in

7

finding Petitioner lacked standing because it had not pleaded facts demonstrating a causal connection between the agreements and its alleged injury. *Borough of St. Clair*, slip op. at 3, 2015 WL 5432784 at 3.

Presently, the Board dismissed Petitioner's objection in its opinion and order issued following the September 2013 hearing, concluding that the Township is still required to "comply and ensure compliance by others with the terms and conditions of the permit and the applicable regulations, regardless of the terms of any contract between [the parties]." (R.R. at 48a.) Any contractual obligations with FKV did not override the Township's duty to comply with the law. *Id.* Petitioner failed to provide legal authority that would act to prevent the Township from entering into an agreement with FKV for the provision of technical and financial expertise necessary to design, permit, and operate the landfill. *Id.*

We cannot conclude the right of first refusal in the first offending provision of Section 11 of the Agreement grants to FKV ownership rights such that it must have a permit. Further, we agree with the Township and Department that Petitioner lacks standing. The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge. *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1124 (Pa. Cmwlth. 2015), quoting *Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014). Petitioner has not set forth any facts to show it has been aggrieved by the Agreement between FKV and the Township, and thus lacks standing to challenge the legality of that Agreement.

8

Finally, Petitioner argues the BRADS landfill permit must be revoked because a mining permit was not issued in conjunction with the landfill permit. In support of this assertion, Petitioner cites Section 502(d) of the SWMA[3] which requires the permit application set forth the manner in which the operator plans to comply with the Surface Mining Conservation and Reclamation Act[4] (SMCRA). In its June 6, 2016 opinion and order, the Board noted this section does not require the simultaneous issuance of a mining permit and the Board has held in prior opinions that the Department need only be able to conclude the applicant has a reasonable likelihood of securing necessary permits. (R.R. at 92a.) The Board found as credible the testimony of Michael John Menghini, the Department's mining manager, who stated that obtaining such a permit is not likely to be an issue. *Id.*

Clearly, the Township must acquire a mining permit in the event it needs to excavate residual coal. The Board noted that the SWMA requires compliance with all other laws and, therefore, should the Township need a mining permit, it will have to acquire one prior to removing any coal. (R. R. at 90a.)

The Township estimates 5-10 years will elapse before the Township reaches Cell 4. (Intervenor's Brief at 18.) Mining permits expire in five years. 25 Pa. Code § 86.40(a). Such a permit can be extended beyond five years, but would terminate if the permittee has not begun mining coal within three years of issuance. 25 Pa. Code § 86.40(b). Petitioner's extensive discussion as to what constitutes mining fails to respond to the Township's assertion that mining of coal, if any,

---

[3] Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. § 6018.502(d).

[4] Act of May 31, 1945, P.L. 1198, *as amended*, 52 P.S. §§ 1396.1-1396.19b.

would not take place for several years. Requiring the Township to obtain a mining permit that will, in all likelihood, become null and void years before it is needed simply defies logic. As there is no present need to mine Cell 4, the Township is not required to have a mining permit.

At worst, the Township's application failed to set forth the manner in which the operator planned to comply with SMCRA. However, Section 901[5] of the SWMA provides that the terms and provisions of the Act are to be liberally construed to best achieve and effectuate its goals and purposes. As set forth in Section 102(5) of the Act, one purpose thereof is to "provide a flexible and effective means to implement and enforce the provisions of [the] Act."[6] A reversal of the Board's decision on the basis that the application failed to fully comply with Section 502(d), where the Board was satisfied the Township could obtain the necessary mining permits if and when required, would fly in the face of the Act's stated goals and purposes.

For these reasons, the order of the Board is affirmed.

_____
JOSEPH M. COSGROVE, Judge

---

[5] 35 P.S. § 6018.901.
[6] 35 P.S. § 6018.102(5)

10

Borough of St. Clair, : 
            Petitioner : 
             : 
      v. : 
             : 
Department of Environmental : 
Protection, :    No. 1026 C.D. 2016
            Respondent : 

## O R D E R

AND NOW, this 7th day of July, 2017, the order of the Environmental Hearing Board is hereby AFFIRMED.

_____
JOSEPH M. COSGROVE, Judge