2026 PA Super 88

| MONTGOMERY COUNTY AND OTAR KOSASHVILI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| JULIETT BARZILAYEVA | : | |
| | : | |
| | : | |
| APPEAL OF: JULIETT BARZILAYEVA AND EUGENE ZWICK | : | No. 1592 EDA 2024 |

Appeal from the Order Entered May 3, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190800558

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

DISSENTING OPINION BY KUNSELMAN, J.:       **FILED APRIL 30, 2026**

## I.       Introduction

Nearly three years ago, the Sheriff of Philadelphia County auctioned off the real property of Juliett Barzilayeva and Eugene Zwick (collectively, "the Owners"). The sale arose from a transferred-judgment-execution proceeding that Otar Kosashvili initiated in the Court of Common Pleas of Philadelphia County. The Majority cancels the sale and concludes that the Philadelphia court lacked jurisdiction over "the unique circumstances" surrounding the transferred judgment. Majority Slip Opinion at 1, ___ A.3d ___, ___. As a court of general jurisdiction, the Court of Common Pleas of Philadelphia County has subject-matter jurisdiction over **the class of cases** to which this matter belongs: execution proceedings of transferred judgments.

My learned colleagues in the Majority mistake the issue of whether Mr. Kosashvili had standing to transfer and enforce the judgment for the issue of

subject-matter jurisdiction. I would dismiss the challenge to Mr. Kosashvili's standing as waived. But even if the Owners had preserved standing for our review, Pennsylvania's restitution statutes do not prohibit crime victims (like Mr. Kosashvili) from executing civil judgments reduced from restitution orders against their criminal perpetrators (like Barzilayeva). For these reasons and others below, I would affirm; therefore, I respectfully dissent.

## II.    Factual & Procedural Background

On March 26, 2012, Barzilayeva pleaded guilty to embezzling more than $150,000 from Mr. Kosashvili.[1] ***Commonwealth v. Barzilayeva***, CP-46-CR-0009160-2011, Docket Sheets at 2 (C.C.P. Montgomery 2012). The court sentenced her to nine to 23 months of incarceration, followed by five years of probation. ***See id.*** In addition, the sentencing court ordered Barzilayeva to pay $773.50 in costs and fees and $154,876.03 in restitution to Mr. Kosashvili. ***See id.*** at 13; ***see also*** Prothonotary's Certified Judgment at 3 (Restitution Order in ***Barzilayeva***, ***supra***). At sentencing, Barzilayeva failed to disclose to the court that she owned property located at 1804 Bainbridge Street in Philadelphia County. ***See*** Owners' Motion to Set Aside Sheriff's Sale, Ex. 1 (September 5, 2007 Deed from Feinsteins to Barzilayeva and Tsvik, a.k.a. Mr. Zwick).

Beginning on August 9, 2012, Barzilayeva made payments towards her costs, fees, and restitution in amounts ranging from $30 to $393.50 per

---

[1] ***See*** 18 Pa.C.S.A. § 3921(a).

- 2 -

month. In October 2013, she ceased making payments for four years. By then, Barzilayeva had paid the $773.50 that she owed to Montgomery County. *See* Barzilayeva's May 31, 2022 Petition to Postpone Sheriff's Sale, Ex. D at 1. On October 11, 2017, she resumed restitution payments to Mr. Kosashvili at $15 per month. ***See Barzilayeva***, ***supra***, Docket Sheets at 9-12.[2]

On May 6, 2019, the Prothonotary of Montgomery County entered judgment in favor of the clerk of courts and against Barzilayeva for $153,926.03, *i.e.*, the remaining amount that she owed to Mr. Kosashvili for restitution. ***See*** Prothonotary of Montgomery County's Certified Judgment at 2 (Praecipe and Entry of Judgment in ***Barzilayeva***, ***supra***). Five months later, Mr. Kosashvili filed a certified copy of the Montgomery County judgment with the Office of Judicial Records of Philadelphia County. He praeciped the Office of Judicial Records to enter judgment against Barzilayeva and in favor of Montgomery County and himself.

The following summer, Mr. Kosashvili praeciped for a writ of execution against Barzilayeva and her property at 1804 Bainbridge Street. The Owners failed to respond with preliminary objections. The writ issued, but all sheriff's sales were on a moratorium due to the COVID-19 pandemic. Around the same time, Wilmington Savings Fund Society, FSB, which held the mortgage on the Owners' property, filed a foreclosure action against them. ***See*** Kosashvili's

---

[2] According to the docket sheets of the Clerk of Courts of Montgomery County, in the middle of March 2026, Barzilayeva still owed Mr. Kosashvili $152,671.03 in restitution. ***See Commonwealth v. Barzilayeva***, CP-46-CR-0009160-2011, Docket Sheets at 13 (C.C.P. Montgomery 2012).

- 3 -

Exceptions to Proposed Schedule of Distribution of Proceeds at 2 (citing *Wilmington Savings Fund Society, FSB v. Barzilayeva*, Civil No. 201000844 (C.C.P. Philadelphia 2020)). The court granted Wilmington Savings summary judgment "for the sum of $339,924.44," and the mortgagee obtained its own writ of execution for the property. *Id.* Wilmington Savings instituted additional proceedings for a sheriff's sale.

Next, on July 7, 2022, Mr. Zwick intervened in Mr. Kosashvili's action and claimed to own 75% of the property. This further delayed the sale.

On July 28, 2023, Mr. Kosashvili praeciped for reissuance of the writ of execution.[3] Once again, the Owners neglected to file preliminary objections. Mr. Kosashvili notified the Owners, Wilmington Savings, Brighton Beach & Son Production, and those parties' attorneys[4] that the property would go to sheriff's sale "on October 3, 2023, in an online bidding platform at www.bid4assets.com/philadelaphia to enforce the court judgment of $153,926.03 obtained by Otar Kosashvili against Juliett Barzilayeva." July 28, 2023 Notice of Sheriff's Sale at 1. The Owners made no further attempts to postpone the sale, and the court did not order a postponement.

On September 27, 2023, the Sheriff's Office made the following entry on the docket: "Writ return filed. Sale postponed – Writ Number 2206-430."

_____

[3] Mr. Kosashvili's attorney also attached his affidavit to the writ of execution identifying the Owners; Wilmington Savings Fund Society, FSB; and Brighton Beach & Son Production as having record interests in the property.

[4] At the time, the Owners had separate attorneys.

Docket Sheets at 7 (some capitalization removed).  The Sheriff's Office made seven prior "Sale postponed" entries on the docket.  ***See id.*** at 4-7.

At the end of September 2023, Mr. Zwick contacted a new attorney, John Martucci, Esq., and hired him to represent the Owners jointly.  ***See*** N.T., 2/29/24, at 19.  After reading the September 27th docket entry, Attorney Martucci decided not to file a motion to postpone the sheriff's sale.  He "looked at the docket and [inferred that] it's been postponed . . . why file a motion to stay?  It would be moot."  N.T., 4/11/24, at 4.  His interpretation of the docket entry was incorrect.

The Sheriff of Philadelphia County does not declare upcoming sales postponed by marking "Sale postponed" on the docket.  Instead, the sheriff can get notice that a sale is postponed from one of the parties or the court as late as the afternoon of the scheduled sale.  ***See id.*** at 7.  The sheriff does not postpone an upcoming sale by making a notation on the docket.  Such entries always come ***after*** the date of the sale.  ***See id.***  In short, the September 27th entry was not an indication that the upcoming sheriff's sale would be postponed, as Attorney Martucci thought, but a notation that a ***prior*** sale had been postponed.

On October 3, 2023, the sheriff put the property up for public auction.  There were 67 bids.  Zeon Real Estate LLC, a company that Mr. Kosashvili partially owned, was the highest bidder; it paid $290,000 for the property.  ***See*** Sheriff's Proposed Schedule of Distribution at 1; ***see also*** Kosashvili's Exceptions to Proposed Schedule of Distribution of Proceeds at 3.

A few weeks later, the Owners moved to have the sheriff's sale set aside and the proceedings stayed. They raised four grounds to set aside the sale.

First, the Owners claimed Mr. Kosashvili violated Pennsylvania Rule of Civil Procedure 3129.1 by failing to provide notice of the sheriff's sale to an unidentified tenant of the property. Second, they alleged that Mr. Kosashvili violated Pa.R.Civ.P. 3129.2 by not placing handbills on the property 30 days before the sheriff's sale. Third, the Owners asserted Mr. Kosashvili violated Pa.R.Civ.P. 3129.3 by failing to file a new notice and publication with the Office of Judicial Records at least 15 days before the sale. Fourth, according to the Owners, the sale price of $290,000 was "grossly inadequate . . . [and] no actual funds were tendered making this bid a fictitious bid." Owners' Motion to Set Aside the Sheriff's Sale at 10. The motion did not assert that Mr. Kosashvili lacked standing or improperly transferred the judgment.

Mr. Kosashvili filed a response opposing the motion. He observed that the Owners admitted to having received actual "notice of the sheriff's sale pursuant to Pa.R.Civ.P. 3129.1." Kosashvili's Response in Opposition to Motion to Set Aside Sheriff's Sale at 1 (emphasis removed). He then proceeded to refute the four issues that the Owners presented. *See id.* at 1-4.

The Owners filed a reply, which raised a new issue. They claimed that the sheriff's sale was invalid, because of the sheriff's September 27, 2023 docket entry that "the sheriff's sale scheduled for October 3, 2023 on Writ Number 2206-430 was postponed. Despite this postponement notice, the

sale, amazingly went forward." Owners' Reply Memorandum of Law in Support of Their Motion to Set Aside the Sheriff's Sale at 3 (some capitalization removed). According to the Owners, the September 27th entry required Mr. Kosashvili to serve them with new notices of a new sale date. **See id.** at 4-7. Again, the Owners made no claim Mr. Kosashvili lacked standing to transfer the judgment from Montgomery County.

On February 14, 2024, the Sheriff's Office filed a Proposed Schedule of Distribution for the proceeds from the sale. Under the proposed schedule, Mr. Kosashvili would receive $194,689.02, and the Owners would receive "Unused Proceeds" of $64,111.31. **See** Sheriff's Proposed Schedule of Distribution at 1. The schedule omitted Wilmington Savings, the first-position lienholder of the mortgage.

That oversight prompted Mr. Kosashvili to file exceptions to the sheriff's proposed distribution. He indicated that Wilmington Savings had the property listed for a second sheriff's sale on May 7, 2024 to execute upon its summary judgment in the foreclosure action. Instead of having a second sheriff's sale, Mr. Kosashvili invoked the court's equitable powers; he claimed "it would be inequitable to permit [Barzilayeva] to retain the balance of the sale's unused proceeds, when [she] has defaulted on both the mortgage and has been required to pay restitution to [Mr. Kosashvili] pursuant to a criminal conviction." Kosashvili's Exceptions to Proposed Schedule of Distribution of Proceeds at 6. "Accordingly, the Sheriff's Office should instead distribute the remaining funds to [Wilmington Savings], or alternatively, distribute the

remaining funds to [Zeon Real Estate LLC,] so that it may satisfy the mortgage still encumbering the property." *Id.*

On February 29, 2024, the court held a hearing on the Motion to Set Aside the Sheriff's Sale. The Owners called no witnesses. They entered two exhibits into evidence: (1) the notice of entry of judgment and (2) the original judgment from Montgomery County. Attorney Martucci made several oral arguments regarding the sheriff's entry of September 27, 2023.

Also, the Owners claimed, for the first time, that Mr. Kosashvili failed to follow the proper procedure to transfer the Montgomery County judgment or to become a collection agent for Montgomery County. *See* N.T., 2/29/24, at 4-6, 18-19. Notably, the Owners did *not* argue that the Court of Common Pleas of Philadelphia County lacked subject-matter jurisdiction over this case due to Mr. Kosashvili's alleged procedural mistake. Instead, the Owners said that he lacked "standing." *Id.* at 19.

Mr. Kosashvili's counsel indicated that the propriety of the judgment's transfer was not raised in the Motion to Set Aside the Sheriff's Sale. *See id.* at 11. He also said, "I don't believe that you can challenge the validity of a judgment in a sheriff's sale proceeding . . . The time to have challenged the judgment, if possible, has long since lapsed." *Id.* "[T]his isn't a motion to set aside the judgment. [The Owners' argument] is a motion to strike a judgment, and you can't challenge [an underlying] judgment in a sheriff's sale proceeding." *Id.* at 17-18.

Counsel for the Owners answered, "I am not challenging the judgment. I'm challenging the party whose name is on the judgment. It is Montgomery County and the Clerk of Courts from [Mr. Kosashvili's] documents. Not . . . Otar Kosashvili --" *Id.* at 18.

The trial court interjected, "But the judgment didn't put the house in foreclosure. I mean, the judgment is separate [from the sheriff's sale]." *Id.*

The Owners' attorney replied:

> The judgment has Montgomery County. [Mr. Kosashvili] is not added to this judgment. You have to go back to Montgomery County. Montgomery County is the collecting agency for this, for the restitution order . . . the Clerk of Courts and Montgomery County, not the victim, [are] the judgment holder[s]. The judgment was never entered in this party. They don't have *standing* to do this.

*Id.* at 18-19 (emphasis added).

The court took the matter under advisement and reopened the record at a hearing on April 11, 2024. Mr. Kosashvili called Steve Wakefield, Esq., Senior Attorney in the City of Philadelphia's Tax Litigation & Collections Unit, to testify regarding the "Sale postponed" docket entries. The Owners objected on the grounds that Attorney Wakefield had no knowledge about the docket entries in this case. The court overruled the objection and allowed Attorney Wakefield to testify based on his general knowledge of those types of docket entries. He testified that the "Sale postponed" entries do not indicate that a future sale is postponed. Instead, they are notations about the postponement of previous sales. The court also heard argument on the issues presented in

the Motion to Set Aside the Sheriff's Sale, but the parties did not revisit the question of Mr. Kosashvili's standing.

Next, they argued Mr. Kosashvili's Exceptions to the Proposed Schedule of Distribution. An attorney for Wilmington Savings was present. She explained that her client held the superior lien. Wilmington Savings said, "to the extent that there are excess funds [from the October 3, 2023 sheriff's sale], it would be inequitable to return the funds to the former property Owners, when there is still such an outstanding judgment that we hold." N.T., 4/11/24, at 15-16. The mortgagee contended that the court should distribute "the excess funds to [it,] the senior, at this point, judgment creditor." *Id.* at 16.

Wilmington Savings then moved to reassess the mortgage-foreclosure damages to add interest for delays, attorneys' fees, and court costs. The new owner, Zeon Real Estate LLC, had no objection to that reassessment. Lastly, if the court overturned the October 3, 2023 sale, Wilmington Savings explained that it would conduct a *de novo* sheriff's sale to enforce its judgment against the Owners, and they would lose the property anyway. *See id.* at 21.

On May 3, 2024, the court entered an order denying the Owners' Motion to Set Aside the Sheriff's Sale. It simultaneously granted Wilmington Savings' motion to reassess the foreclosure damages.

Twelve days later, the court sustained Mr. Kosashvili's Exceptions to the Proposed Schedule of Distribution. It ordered that $0 from the sheriff's sale would go to the Owners and $258,809.33 would go to Wilmington Savings to

satisfy its foreclosure judgment. Of the remaining $31,190.67 from the sale, $20,102.32 went to property-transfer taxes; $258.50 went to a recording fee; $9,577.69 went to the Sheriff's Office; and $1,261.16 satisfied municipal leins on the property. **See** Sheriff's Proposed Schedule of Distribution at 1. Hence, nothing from the sale proceeds went to Mr. Kosashvili for restitution.

The Owners timely appealed the May 3, 2024 Orders. Prior to briefing, they withdrew their appeal in **Wilmington Savings Fund Society, FSB v. Barzilayeva**, 1593 EDA 2024. This appeal, at 1592 EDA 2024, remains ripe for resolution.

## III. Analysis

The Owners raise nine claims of error, which I have reordered for ease of discussion as follows:

1. Whether the Court of Common Pleas of Philadelphia County lacked subject-matter jurisdiction over this case, because naming Montgomery County, Pennsylvania a party hereto was fictitious, where counsel for Mr. Kosashvili had no authority nor was engaged by Montgomery County, Pennsylvania to proceed on their behalf and therefore based on this deception all writs, orders and/or actions hereto are void.

2. Whether the trial court abused its discretion in refusing to set aside the sheriff's sale, because the relief that the Court of Common Pleas of Montgomery County provided to Mr. Kosashvili was an order of restitution, and he needed to seek modification of the order of restitution prior to transferring the judgment.

3. Whether the trial court abused its discretion in refusing to set aside the sheriff's sale, because that sale was postponed for more than 130 days, new

- 11 -

notice and publication were required under the Pennsylvania Rules of Civil Procedure.

4. Whether Mr. Kosashvili failed to serve the praecipe for the writ of execution, the writ of execution, and the accompanying affidavit on the Owners.

5. Whether the writ of execution failed to comply with Pa.R.Civ.P. 3129.2.

6. Whether Mr. Kosashvili failed to comply with Pa.R.Civ.P. 3129.1(b)(4).

7. Whether the trial court abused its discretion in refusing to set aside the sheriff's sale, because the sale price of the property was grossly inadequate.

8. Whether the Sheriff's Office violated the Owners' due-process rights by making the September 27th "Sale postponed" entry on the docket.

9. Whether the trial court permitting Attorney Wakefield to testify was an abuse of discretion.

*See* Owners' Brief at 4-7.

*A.    Standing Rather than Subject-Matter Jurisdiction*

I address the Owners' first two issues together, because the Majority seemingly conflates them in its analysis. *See* Majority Slip Opinion at 3-4, ___ A.3d ___, ___ (listing the issue of whether Mr. Kosashvili "needed to pursue modification of the ordered statutory relief with the [Court of Common Pleas of Montgomery County] prior to seeking other remedies" first and the Owners' issue claiming that the trial court "lacked subject-matter jurisdiction over this case because naming Montgomery County, Pennsylvania a party hereto was fictitious" seventh). The Majority extrapolates from other cases involving a sentencing court's ongoing jurisdiction over orders of restitution

- 12 -

that the Court of Common Pleas of Philadelphia County lacks subject-matter jurisdiction over the civil judgment that Mr. Kosashvili transferred to it. In reaching that conclusion, the Majority rejects Mr. Kosashvili's assertion that the Owners are making a standing argument, masquerading as a challenge to subject-matter jurisdiction. ***See Id.*** at 5 n.2, \_\_\_ A.3d at \_\_\_ n.2; ***see also*** Kosashvili's Brief at 31-33.

In the trial court, the Owners said they were challenging Mr. Kosashvili's standing to commence this proceeding. They never said "jurisdiction" in their repeated filings and arguments to postpone or set aside the sheriff's sale. Rather, they argued that, because Mr. Kosashvili was not named on the judgment filed with the Prothonotary of Montgomery County, he did not "have ***standing*** to do this." N.T., 4/11/14, at 19 (emphasis added).

Now, on appeal, likely realizing that they waived the issue of standing by not raising it below at the first opportunity, the Owners resort to the informal fallacy of equivocation. They recast their standing argument as an attack on the Philadelphia court's subject-matter jurisdiction. This rhetorical sleight-of-hand is impermissible under the Pennsylvania Rules of Appellate Procedure. Raising new issues and legal theories for the first time on appeal results in waiver.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Trigg v. Children's Hosp. of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. Super. 2020).

- 13 -

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This stems from the fact that "issue preservation is foundational to proper appellate review." **Trigg**, 229 A.3d at 269 (quoting **In re F.C. III**, 2 A.3d 1201, 1211 (Pa. 2010)). "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." **Id.**

Here, the Owners did not afford the trial court an opportunity to consider whether, under 42 Pa.C.S.A. § 9728 and precedents applying it, Mr. Kosashvili needed to seek any further relief or a modification of the restitution order in the Court of Common Pleas of Montgomery County. The Owners did not include the statute or precedents applying it in their multiple filings before the Philadelphia court, because they never raised standing in those filings. **See** Owners' Motion to Set Aside the Sheriff's Sale; **see also** Owners' Reply Memorandum of Law in Support of Their Motion to Set Aside the Sheriff's Sale.

They only challenged Mr. Kosashvili's standing once, at the February 2024 hearing on the Motion to Set Aside the Sheriff's Sale. Even then, the Owners offered no statute or case law for the trial court to consider. **See** N.T., 2/29/24 at 4-9, 18. Attorney Martucci relied solely on his past experience in criminal cases. "You have to go back to Montgomery County. Montgomery County is the collecting agency for this, for the restitution order," he said. **Id.** at 18. "I am just going through procedure, and having done enough criminal

cases that the county enters judgment, so they can collect." *Id.* That was the full extent of his argument below on this issue.

Surely, the Civil Division of the Philadelphia court was not supposed to accept Attorney Martucci's legal conclusion at face value. Nor was that court required to locate 42 Pa.C.S.A. § 9728 on its own, find precedents applying it, and craft a legal argument on the Owners' behalf. Rule of Appellate Procedure 302(a) required the Owners to present their arguments on 42 Pa.C.S.A. § 9728 to the trial court in the first instance. Thus, any appellate arguments they make based on Section 9728 and its precedents are waived. *See* Owners' Brief at 35-36.

Furthermore, "standing is an issue that halts justiciability of an action on its merits; [thus, it] must be raised at the soonest possible opportunity and may be waived if not promptly raised." *In re the Interest of K.N.L.*, 284 A.3d 121, 151 n.22 (Pa. 2022). In civil proceedings, the issue of standing is waived unless specifically raised in a preliminary objection. *See, e.g.*, *Erie Indem. Co. v. Coal Operators Cas. Co.*, 272 A.2d 465, 467 (Pa. 1971).

A proceeding to execute a judgment "shall be commenced by filing a praecipe for a writ of execution with the prothonotary of any county in which the judgment has been entered." Pa.R.Civ.P. 3103(a). Like any commensurate filing, defendants may preliminarily object to the praecipe under Pa.R.Civ.P. 3142. "All preliminary objections shall be raised at one time." Pa.R.Civ.P. 3142(b). Alternatively, the Owners could have filed a motion to stay the writ of execution by alleging a defect in the writ, *i.e.*, that

Mr. Kosashvili lacked standing, prior to the sheriff's sale. **See** Pa.R.Civ.P. 3121(b). Again, "all objections by the defendant shall be raised at one time." Pa.R.Civ.P. 3121(e). In any event, the time to challenge Mr. Kosashvili's standing was **well before** the sheriff's sale occurred.

The Owners filed no preliminary objections to Mr. Kosashvili's praecipe for a writ of execution or his praecipe to reissue the writ. They also filed no motion to stay the writ, based on an allegation of a lack of standing. Hence, they waived any claim that Mr. Kosashvili lacked standing to transfer the judgment from Montgomery County on this basis as well. **See Erie Indemnity**, **supra**. I would dismiss their challenge to standing on that basis alone.

Because they did not preserve the standing issue or any argument based on 42 Pa.C.S.A. § 9728 for appellate review, the Owners try to reframe their standing issue as jurisdictional. **See** Owners' Brief at 34-36.[5] The Owners do

_____

[5] The Majority, in turn, reframes the Owners' appellate argue as one that the Philadelphia court lacked "authority to make the judgment for restitution 'attach to the property' owned by Barzilayeva." Majority Slip Opinion at 6 n.2, ____ A.3d at ____ n.2. The Owners did not raise an issue of the Philadelphia court's "authority" below or in their Statement of the Questions Involved at 6-7.

In fact, the word "authority" regarding the Philadelphia court does not appear anywhere in the Owners' appellate brief. Every reference the Owners make to "authority" contends that Mr. Kosashvili had no "authority" to file this proceeding. **See** Owners' Brief at 17-18, 34, 36. That is clearly an argument against Mr. Kosashvili's standing, not the authority or the Court of Common Pleas of Philadelphia County "to make the judgment for restitution attach to the property . . . ." Majority Slip Opinion at 6 n.2, ____ A.3d at ____ n.2. As

*(Footnote Continued Next Page)*

so, because "subject-matter jurisdiction of a court is nonwaivable . . . ." *In re J.M.Y.*, 218 A.3d 404, 415 (Pa. 2019).

However, neither the Owners' attack on opposing counsel's "authority" nor their contention that Mr. Kosashvili failed to follow criminal procedure in Montgomery County implicates the Court of Common Pleas of Philadelphia County's subject-matter jurisdiction. Owners' Brief at 6. Those contentions implicate whether Mr. Kosashvili had "standing" to transfer the judgment to Philadelphia County and commence this enforcement proceeding. N.T., 4/11/24, at 19. Regrettably, the Majority allows the Owners to confuse standing for subject-matter jurisdiction, and the Majority further confuses the issue as one of court authority. *See* Footnote 5, *supra*.

The definitional distinction "between standing, personal jurisdiction, subject matter jurisdiction, and judicial power is sometimes subtle; however, it is important." *Grimm v. Grimm*, 149 A.3d 77, 83 (Pa. Super. 2016), *overruled on other grounds by* *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76 (Pa. 2023). Subject-matter jurisdiction "inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs." *Domus, Inc. v. Signature Bldg. Sys. of PA, LLC*, 252 A.3d 628, 636 (Pa. 2021). By contrast, standing is a "party's right to make a legal claim or *seek judicial enforcement* of a duty or right

_____

noted above, the Owners framed the issue as "standing" below, and they now frame it as "jurisdiction" on appeal. Unlike the Majority, I therefore would dismiss any challenge to the Philadelphia court's "authority" as waived.

based on the party's having a sufficient interest in a justiciable controversy." Standing, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

In **Domus**, a general contractor transferred a judgment to the Court of Common Pleas of Lackawanna County, and the subcontractor moved to strike the judgment. The trial court refused to strike the transferred judgment, and the subcontractor appealed. This Court reversed, because it concluded that the transferring party's failure to follow certain statutory procedures in the original court to authenticate the judgment deprived the Court of Common Pleas of Lackawanna County of subject-matter jurisdiction.

The Supreme Court of Pennsylvania granted review and reversed. It held "that the failure to authenticate a [transferred,] foreign judgment . . . does not implicate the subject-matter jurisdiction of the court of common pleas." **Domus**, 252 A.3d at 636. The High Court explained, "The pertinent consideration is whether the court could **enter upon the inquiry**, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case." **Id.** (emphasis added). "Subject-matter jurisdiction is not synonymous with a tribunal's power to act, although the terms are often used interchangeably by judges and litigants alike." **Id.** (some punctuation omitted).

The **Domus** Court said, "the absence of proper authentication under [the transfer statute] does not render the court of common pleas incompetent to determine controversies in the general class to which this case belongs, *i.e.*, actions to enforce foreign judgments." **Id.** After reviewing the statute

that this Court interpreted as depriving the trial court of subject-matter jurisdiction, the Supreme Court found no statutory language on jurisdiction. "Given the statute's silence on [jurisdiction], we conclude [it] presents no bar to the **virtually unlimited** subject-matter jurisdiction of the courts of common pleas, including jurisdiction of foreign-judgment-enforcement actions." **Id.** at 637 (emphasis added). "Where the language of a statute makes no reference to a decrease in the court's subject-matter jurisdiction, such a diminution cannot simply be inferred." **Id.**

The same logic applies to the transferred judgment in this action. Under the Constitution of the Commonwealth of Pennsylvania and the jurisdictional statutes, "the courts of common pleas have unlimited original jurisdiction of all actions, except where otherwise provided by law." **Id.** (citing Pa. Const. art. V, § 5[6] and 42 Pa.C.S.A. § 931(a)).

Neither the Owners nor the Majority cite any law stating, in plain language, that the legislature stripped the courts of common pleas of their competency to hear proceedings to enforce transferred judgments. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "The plain language of the statute is the best indicator of the legislature's intent." **Commonwealth v. Chesapeake Energy Corp.**, 247 A.3d 934, 942 (Pa. 2021). Critically, "statutes purporting to limit a court's jurisdiction must

_____

[6] "There shall be one court of common pleas for each judicial district . . . having unlimited original jurisdiction in all cases . . . ." Pa. Const. art. V, § 5.

be strictly construed" against curtailing jurisdiction. ***Domus***, 252 A.3d at 637 (some punctuation omitted).

Like the statute in ***Domus***, the statute that the Owners and the Majority rely upon to divest the Court of Common Pleas of Philadelphia County of its inherent, constitutional jurisdiction is silent on jurisdiction. ***See*** 42 Pa.C.S.A. § 9728. The word "jurisdiction" does not appear in the statute. Indeed, the General Assembly did not address Section 9728 to the courts of common pleas. Rather, the statute is a command to county probation offices. "[A]ll restitution, reparation, fees, costs, fines and penalties shall be collected by the county probation department or other agent designated by the county commissioners . . . with the approval of the president judge of the county . . . ." 42 Pa.C.S.A. § 9728(a)(1).

Section 9728 in no way circumscribes the jurisdiction of common pleas courts to decide proceedings to enforce transferred judgments. The General Assembly codified the at-issue provision in the chapter of the Judicial Code on sentencing, rather than the chapter on jurisdiction. Simply stated, nothing in Section 9728 reduces the legislature's broad grant of general jurisdiction to courts of common pleas found elsewhere in the Judicial Code – "the courts of common pleas shall have ***unlimited*** original jurisdiction of ***all actions and proceedings***, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas." 42 Pa.C.S.A. § 931(a) (emphasis added).

An action to enforce a transferred judgment is a proceeding "cognizable by law or usage in the courts of common pleas." ***Id.*** Because the courts of common pleas have "unlimited original jurisdiction," there is no doubt that this action belongs to a class of cases over which the courts of common pleas have subject-matter jurisdiction. ***Id.*** Thus, I would hold that any failure by Mr. Kosashvili to seek modification of the restitution order in Montgomery County prior to transferring the judgment to Philadelphia County "does not deprive the court of common pleas of subject-matter jurisdiction" over that class of cases. ***Domus***, 252 A.3d at 641. A claim that the Court of Common Pleas of Philadelphia County lacks subject-matter jurisdiction over proceedings to enforce transferred judgments is meritless.

In fact, all of the Owners' contentions that the trial court lacked subject-matter jurisdiction are really standing arguments in disguise. The Supreme Court of Pennsylvania has held that the unauthorized practice of law does ***not*** negate subject-matter jurisdiction. ***See Bisher v. Lehigh Valley Health Network, Inc.***, 265 A.3d 383, 405 (Pa. 2021). Thus, even if Mr. Kosashvili's attorney deceived the trial court by intimating that he represented Montgomery County, as the Owners suggest, that alleged deception does not deprive the trial court of subject-matter jurisdiction.[7] Moreover, Pennsylvania "jurisprudence does not view standing as a jurisdictional issue . . . ." ***Id.***

_____

[7] I note that the Owners produced no evidence of that alleged deception, nor did the trial court find that such a deception occurred. To the contrary, the
*(Footnote Continued Next Page)*

- 21 -

In this Commonwealth, "the doctrine of standing . . . is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter." ***Commonwealth, Office of the Governor v. Donahue***, 98 A.3d 1223, 1229 (Pa. 2014). "For standing to exist, the underlying controversy must be real and concrete, such that ***the party initiating the legal action*** has, in fact, been aggrieved." ***Id.*** (emphasis added). "A party is aggrieved for purposes of establishing standing when the party has a substantial, direct, and immediate interest in the outcome of litigation." ***Id.*** at 1229.

When this Court has barred crime victims from appearing as parties in criminal matters, we have done so on the basis that victims lack standing. In the 1970s (*i.e.*, 20 years before the General Assembly adopted the statutes requiring restitution on behalf of victims), this Court said the "victim . . . has no legitimate interest [in a criminal case], other than as a member of the general public in seeing a violator of the laws brought to justice by the Commonwealth and punished for his misdeeds." ***In re Petition of Piscanio***, 344 A.2d 658, 661 (Pa. Super. 1975). "If a [victim] feels individually harmed, his remedy is a civil suit for damages." ***Id.***

---

trial court found that the Owners had "no proof to support their claims that [Mr. Kosashvili's] attorney was acting in an unauthorized manner. No Montgomery County representative ever appeared to argue this issue or have the county removed from the case. In fact, the record shows that Montgomery County 'authorized a collection of this judgment to seize this property and sell it.'" Trial Court Opinion, 10/28/24, at 13 (quoting N.T., 2/29/24, at 9).

Based on this rationale, we subsequently opined, "the state, represented by the District Attorney, is the party plaintiff in a criminal prosecution; the victim/complainant is not considered a party to the proceeding. The victim acts only as a prosecuting witness." *Commonwealth v. Malloy*, 450 A.2d 689, 693 (Pa. Super. 1982). *See also Linda R.S. v. Richard D.*, 410 U.S. 614, 619, (1973) (stating, a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.").

For example, in *Malloy*, a victim attempted to appeal a pre-trial order dismissing the charges against defendants accused of stealing from the victim. Based on the distinct roles of a district attorney and a victim, we held that the "appellant, as victim or witness, lacks 'party' status in this criminal prosecution, [hence,] he has *no standing* to appeal . . . ." *Malloy*, 450 A.2d at 694 (emphasis added).

Here, the crux of the Owners' purported subject-matter-jurisdiction claim is that Mr. Kosashvili was the wrong party to initiate this transferred-judgment-enforcement action in the Court of Common Pleas of Philadelphia County. The Majority agrees and takes the position that Mr. Kosashvili needed to seek modification of the restitution order in the Court of Common Pleas of Montgomery County before commencing this proceeding to enforce the transferred judgment. Thus, although my learned colleagues hold that the Philadelphia court lacked jurisdiction, they actually decide that Mr. Kosashvili lacked standing to transfer and enforce the judgment based on his status as Barzilayeva's victim. Hence, the Majority insists that he return to Montgomery

- 23 -

County to enlist the aid of the district attorney, the party whom the Majority believes is the proper one to authorize or initiate this proceeding.

Presumably, if the Clerk of Courts or District Attorney of Montgomery County had transferred and enforced the judgment in Philadelphia County, neither the Owners nor the Majority would question the subject-matter jurisdiction of the transferee court. Hence, they may not properly question that jurisdiction, simply because Mr. Kosashvili was the party who transferred and enforced the judgment. Whether Mr. Kosashvili had the right or the authority to transfer the judgment from Montgomery County is a question of his standing, not the transferee court's jurisdiction.

"Unlike the federal courts, where standing is a non-waivable, jurisdictional issue, the courts of this Commonwealth view the issue of standing as non-jurisdictional and waivable." ***In re Condemnation by Urban Redevelopment Auth. of Pittsburgh***, 913 A.2d 178, 181 n.6 (Pa. 2006). For the foregoing reasons, I would dismiss the Owners' challenge to Mr. Kosashvili's standing to initiate this transferred-judgment-enforcement proceeding as waived.

B.    *Mr. Kosashvili Has Standing*

Alternatively, even if the Owners preserved the issue of standing for review, I would reject the claim. I do not think that 42 Pa.C.S.A. § 9728 required Mr. Kosashvili to take further steps in Montgomery County and add his name as plaintiff to that county's judgment before he could commence this action to enforce that judgment against Barzilayeva. Because Mr. Kosashvili

commenced a civil action in a court, he did not engage in the "self-help" that the Owners and the Majority believe he undertook. By definition, commencing a proceeding in a court cannot be "self-help," because "self-help" is an action done "without judicial process," such as "a 'self-help eviction' [*i.e.*] a landlord removing the tenant's property from an apartment and locking the door against the tenant." Self-Help, BLACK'S LAW DICTIONARY at 1202 (5th ed. 1979).

The Majority requires Mr. Kosashvili to acquire standing by taking further steps of criminal procedure and enlisting the aid of the District Attorney of Montgomery County. The Majority's analysis trivializes that Mr. Kosashvili is the victim of Barzilayeva's theft. **See** Majority Slip Opinion at 11-15, ____ A.3d at ____ (reducing the Crime Victims Act, 18 P.S. §§ 11.101-11.5102, and the retention-of-victim's-rights clause in the restitution statute, 18 Pa.C.S.A. § 1106(g), to mere footnotes). This application of the restitution statutes elevates form over substance, while diminishing Mr. Kosashvili's ancient right to be repaired for the harm of Barzilayeva's crime (and her simultaneous civil trespass) against him. Because Mr. Kosashvili was the victim and has standing to bring this civil proceeding against Barzilayeva, the Majority's requirement is unnecessary and contrary to the legislative reforms involving restitution.

Pennsylvania's statutory scheme on restitution, enacted in the mid-1990s, emerged from a national, pro-victim reform movement to value, protect, and enforce the rights of crime victims. The General Assembly enacted restitution statutes to help victims recover from crimes, not to add

bureaucratic hoops for them to jump through.  In fact, our legislature plainly expressed its intent in the restitution statute itself:  *i.e.*, "to provide the victim **with the fullest compensation** for the loss."  18 Pa.C.S.A. § 1106(c)(1)(i) (emphasis added).

Hence, 42 Pa.C.S.A. § 9728 is a remedial statute.  "A remedial statute . . . should receive a liberal interpretation in advancement of the remedy contemplated."  **Quinn v. Fid. Beneficial Ass'n**, 100 Pa. 382, 385 (1882); **see also** 1 Pa.C.S.A. § 1928(c).  Our courts should liberally interpret Section 9728 in favor of securing crime victims' rights and compensation over obstructive tactics of convicted criminals.

Restitution is one of the law's oldest remedies.  During ancient times, "the community or tribe set the amount of compensation owed a victim by his criminal; the aim of that primitive legal process was primarily to make the victim whole and secondarily to minimize private revenge."  Richard E. Laster, *Criminal Restitution:  A Survey of Its Past History and An Analysis of Its Present Usefulness*, 5 U. Rich. L. Rev. 71, 75 (1970).  In the Torah, Moses wrote, "When someone steals an ox or a sheep, and slaughters it or sells it, the thief shall pay five oxen for an ox, and four sheep for a sheep.  The thief shall make restitution, but if unable to do so, shall be sold for the theft."  Exodus 22:1, THE ACCESS BIBLE, NRSV (O'Day & Peterson eds., 1999).  Similar rules appear in the Code of Hammurabi.  **See** THE CODE OF HAMMURABI KING OF BABYLON 13 (Harper trans., 2d. ed. 1904).

The system of restitution continued through Ancient Rome and into the early common-law courts of England. Upon a jury conviction for larceny, the judge could issue a writ of restitution to the victim for the value of the property that the criminal stole, because the "law prefers the right of the owner." 4 BLACKSTONE'S COMMENTARIES ON THE LAWS OF ENGLAND at 362-63 (St. George Tucker ed., 1803). However, with the strengthening of feudalism and the centralization of government in the Crown, restitution for victims began to wane. By the Late Middle Ages, the criminal owed a payment (known as the "bot") to the victim, and a fine (known as the "wite") paid to the king or lord. Stephen Schafer, THE VICTIM & HIS CRIMINAL at 18 (1968). The victims or their families privately brought prosecution to recover the bot, *i.e.*, restitution, rather than to punish the criminal. *See id.*

Over time, the Crown became more concerned with collecting the wite for itself than recovering the bot for the victim.[8] Moving from restorative justice for victims to retribution on the criminal was "a contributing factor in separating the law into its present civil and criminal components." Laster, *supra*. As the centuries passed, the Crown would come "to take the entire

---

[8] Schafer contends that the greed of feudal lords ended restitution in criminal law. The lords appropriated the bot for their state coffers. Thus, the rights of victims in the state-run criminal system were ignored and minimized in the name of vindicating the "public interest" in punishing crime. Stephen Schafer, THE VICTIM & HIS CRIMINAL at 8 (1968). *But see also* Gilbert Geis, RESTITUTION IN CRIMINAL JUSTICE 147, 150 (Hudson & Burt Galaway eds., 1977) (arguing that the state's commandeering of criminal justice was less about greed and more of a "reaction to popular distress at the awfulness of existing criminal justice arrangements" when victims prosecuted cases directly).

compensative payment and thus effectively . . . raise punishment to the level of satisfaction." *Id.* at 76. Courts rationalized the change by holding "that violent acts breached the king's peace; therefore, the king was as much an injured party as the victim and entitled to a share of the victim's compensation." *Id.* at 79.

"Once the state replaced the victim as the recipient of the criminal's compensative payment, it was a logical next step for the state to replace the victim as the prosecuting party." *Id.* Eventually, "the idea of payments between individuals became associated with tort or civil law, the state completely took over the administration of criminal law, and restitution became mostly divorced from the arena of state punishment." Brian Kleinhaus, *Serving Two Masters: Evaluating the Criminal or Civil Nature of the VWPA and MVRA through the Lens of the* Ex Post Facto *Clause, the Abatement Doctrine, and the Sixth Amendment*, 73 Fordham L. Rev. 2711, 2718 (2005). These focal changes in criminal law "reduced the economic lot of the victim, shifted the aim of the law away from any constructive policy of restitution, and reinforced the concept of harm to society to justify the criminalization of certain 'harmful' acts to individuals." Laster at 80.

Throughout most of the 1900s, restitution was basically an afterthought in criminal cases. "Federal judges, acting pursuant to the Federal Probation Act of 1925, could impose restitution on offenders only as a condition of probation." Kleinhaus at 2719. By the 1930s, a measly "11 states had legislation permitting judges to order restitution as a condition of probation."

R. Barry Ruback, RESTITUTION IN PENNSYLVANIA: A MULTIMETHOD INVESTIGATION at 15 (2002). In response, a national victims' rights movement among scholars, victims' advocates, and other stakeholders emerged in the 1970s and 80s. The movement "criticized the criminal-justice system as being too focused on protecting the rights of the offenders at the expense of victims." David Peters, *Unsettled: Victim Discretion in the Administration and Enforcement of Criminal Restitution Orders*, 166 U. Pa. L. Rev. 1293, 1297 (2018). Along with other reforms, they championed the restoration of restitution to criminal law. **See id.** "The concept of personal accountability for the consequences of one's conduct, and the allied notion that the person who caused the damage should bear the cost, are at the heart of the civil law. It should be no less true in criminal law." U.S. Dept. of Justice, PRESIDENT REAGAN'S TASK FORCE ON VICTIMS OF CRIME at 79 (1982).

Congress and the state legislatures responded. In 1995, our General Assembly, "as part of a comprehensive change in criminal statutes," adopted 18 Pa.C.S.A. § 1106(1) mandating that courts impose restitution in criminal cases. **See** Ruback at 25-26. In doing so, the legislature emphasized that "No judgment or order of restitution shall debar the victim, by appropriate action, to recover from the offender as otherwise provided by law . . . ." 18 Pa.C.S.A. § 1106(g). Following the introduction of mandatory restitution to Pennsylvania law, "rates of restitution increased substantially." Ruback at 42. Of course, winning restitution as a victim and collecting it are separate things.

"For the law to be effective, offenders ordered to pay restitution must do so in a consistent and timely fashion." ***Id.***

To aid victims in collecting restitution, in 1998, the General Assembly "made the county probation department the agency responsible for collecting restitution [and] ordered that 50% of money collected had to go to paying restitution, with the remainder going towards costs, fines, and fees . . . ." ***Id.*** at 26. The legislature also authorized the garnishing of convicted criminals' wages, permitted counties to use private collection agencies, and directed the Department of Corrections to deduct funds from inmates' personal accounts to help with the collection of restitution for crime victims. ***See id.***

Most importantly to this appeal, the General Assembly directed clerks of courts to "transmit to the prothonotary certified copies of all judgments for restitution . . . which, in the aggregate, exceed $1,000, and it shall be the duty of each prothonotary to enter and docket the same of record in his office and to index the same as judgments are indexed . . . ." 42 Pa.C.S.A. § 9728(b)(1). "The total amount for which the person is liable pursuant to this section may be entered as a judgment upon the person or the property of the person . . . ." 42 Pa.C.S.A. § 9728(b)(4).

This new filing was not simply a part of the judgment of sentence. If it were, the legislature would have had no need to direct that the clerk of courts file it with the prothonotary, the recorder of civil judgments. The clerks of courts could have simply entered it in their criminal dockets. Instead, this new filing, under Section 9728(b), became "automatically entered as a ***civil***

judgment . . . ."  Alice Beck Dubow, J.; Judith Florence Olson, J.; Jack A. Panella, P.J.E.; and Victor P. Stabile, J., PENNSYLVANIA RESTITUTION BENCHBOOK at 14 (2020) (emphasis added).

Once reduced to civil judgments, entered in the judgment indices of the prothonotaries against convicted criminals, restitution may be enforced under the Rules of Civil Procedure like any other judgment so indexed.  The question then becomes whether the victim of the underlying crime would have civil standing to enforce a civil judgment for the wrong that the convicted criminal has, beyond reasonable doubt, committed against the victim.  In other words, is the victim aggrieved by the criminal's underlying crime, a crime that is also a civil tort?  "For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been aggrieved."  *Office of the Governor*, 98 A.3d at 1229.   "A party is aggrieved for purposes of establishing standing when the party has a substantial, direct, and immediate interest in the outcome of litigation."  *Id.* at 1229.

As the real party in interest, against whom the criminal committed the underlying crime, clearly the victim has "a substantial, direct, and immediate interest in the outcome of litigation" to recover the victim's portion of the restitution.  *Id.*  After all, it's the victim's money, and the "law prefers the right of the owner."  Blackstone, *supra* at 362-63.  Being the very person to whom the restitution is owed, the victim is the *aggrieved* party when a crime is committed, even more so than the Commonwealth, whose esoteric "peace and dignity" the criminal has breached.

I believe that victims of crimes, in whose favor the General Assembly commanded the courts to impose restitution, have standing to do exactly what Mr. Kosashvili did here. As the real party in interest under the order of restitution and the person aggrieved by Barzilayeva's crime, he had the right to transfer the judgment from Montgomery County to Philadelphia County for enforcement against the property that she owned there.

The Majority decision, requiring Mr. Kosashvili to seek approval of the District Attorney of Montgomery County to add his name to the civil judgment, is redundant and a hollow gesture. At best, this requirement will only serve to delay Mr. Kosashvili's recovery. At worst, it will burden the probation office and district attorney with transferring the civil judgment to Philadelphia County and enforcing it there.

Furthermore, it is a waste of both county's finite personnel resources and tax dollars to repeat the sheriff's sale, when all parties agree that Mr. Kosashvili is the victim of Barzilayeva's embezzlement. Undoubtedly, he has standing to commence a civil action against her for conversion, and, just as undoubtedly, Barzilayeva's 2012 guilty plea collaterally estops her from denying the conversion. *See Shaffer v. Smith*, 673 A.2d 872 (Pa. 1996); *Folino v. Young*, 568 A.2d 171 (Pa. 1990); *In re Kravitz Estate*, 211 A.2d 443 (Pa. 1965); *and Hurtt v. Stirone*, 206 A.2d 624 (Pa. 1965), *cert. denied*, 381 U.S. 925 (1965). Hence, it is a foregone conclusion that Mr. Kosashvili is entitled to a civil judgment against Barzilayeva for the $152,671.03 that she still owes him. *See Barzilayeva*, *supra*, Docket Sheets at 13.

Then why wouldn't Mr. Kosashvili have standing to enforce the judgment for the $152,671.03 in restitution that she owes him for that very act of conversion? The Majority's decision elevates procedure over the rights of the victim and the legislature's clear intent to compensate victims fully for harms they suffered at the hands of criminals. Thus, I disagree with the Majority's application of the restitution statutes as a basis to set aside the sheriff's sale. This Court's holding only frustrates Mr. Kosashvili's efforts to be made whole.

Therefore, I believe the contention that Mr. Kosashvili lacked standing to transfer and enforce the civil judgment against Barzilayeva is meritless.

C.     *Notice of Sheriff's Sale*

For their third through sixth issues, the Owners claim Mr. Kosashvili failed to comply with Pa.R.Civ.P. 3129.1(b)(4), because he did not notify an alleged tenant of the property. **See** Owners' Brief at 20. They also claim that Mr. Kosashvili failed to notify "all those known to [him] to have an interest of record and those with an unrecorded interest . . . ." **Id.** Additionally, the Owners assert that Mr. Kosashvili failed to notify Mr. Zwick of the sheriff's sale. **See id.**

They cite various rules and cases regarding the requirement of "new notices," but then provide no analysis of the facts of this case. **See id.** at 21-22. They summarily "assert [that] strict compliance of notice did not occur and as such the sheriff's sale on Writ #2206-430 should be set aside." **Id.** at 22. The Owners also contend Mr. Kosashvili failed to place handbills upon the property at least 30 days before the sheriff's sale and that new notices and

publications were required, because the sale "was postponed more than 130 days . . . ." *Id.* at 25.

Mr. Kosashvili argues that most of those arguments are underdeveloped and, therefore, waived. *See* Kosashvili's Brief at 10-15. I agree.[9]

Our Rules of Appellate Procedure require appellants to present cogent, well-developed arguments in their briefs to this Court. The argument section of the brief "shall be divided into as many parts as there are questions to be argued; and shall have . . . such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Furthermore, where "reference is made to . . . any other matter appearing in the record, the argument must set forth . . . a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c). Ignoring those Rules results in the waiver of the issues being argued. *See, e.g.*, *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 444 (Pa. Super. 2008). "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority." *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012), *appeal denied*, 69 A.3d 603 (Pa. 2013).

Here, the Owners did not claim, in the trial court, that Mr. Kosashvili failed to provide notice of the sheriff's sale to Mr. Zwick. *See* Owners' Motion to Set Aside Sheriff's Sale at 6. Their motion objected to the sheriff's sale based on the alleged failure of Mr. Kosashvili to notify an unknown,

_____

[9] I incorporate the scope and standard of review for waiver from Section III(A), *supra*, by reference.

unidentified tenant. Thus, the Owners waived the claim that Mr. Zwick did not receive proper notice of the sheriff's sale. *See* Pa.R.A.P. 302(a).

Further, the Owners cite no facts of record to support their assertion that "strict compliance of notice did not occur." Owners' Brief at 22. With no citation to any factual basis in the record for that claim, I would dismiss it as waived. *See* Pa.R.A.P. 2119(c).

Regarding the claim that Mr. Kosashvili failed to notify the tenant who allegedly leased the property, the Owners again cite to no fact of record that this unknown, unidentified tenant actually leased the property. Hence, for purposes of this appeal, there was no tenant. Having failed to offer any evidence of a tenant, the Owners failed to prove the factual basis for their appellate argument. In addition, they cite no law for the proposition that Mr. Kosashvili needed to notify a tenant, who would not be a record owner with any interest for the sheriff's sale to affect. In the absence of any law to support their claim of lack of notice to the unproven tenant, I would dismiss this argument as waived, as well. *See* Pa.R.A.P. 2119(a).

As for the Owners' allegation that Mr. Kosashvili did not place handbills on the property 30 days before the sheriff's sale, they cite nothing in the record to support their factual assertion. *See* Owners' Brief at 23. Therefore, like the unproven claim of a tenant, they have waived this issue under Pa.R.A.P. 2119(c), as well.

At a hearing to "set aside a sheriff's sale . . . [t]he burden of proof rests upon the proponent of the petition to show by clear and convincing evidence

that the circumstances warrant relief." ***M & T Mortg. Corp. v. Keesler***, 826 A.2d 877, 879 (Pa. Super. 2003). The Owners never attempted to meet that burden. They called no witnesses and offered no evidence showing that Mr. Kosashvili neglected to handbill the property. Thus, they have no record support to establish their claim of error. It is waived and facially meritless.

Next, the Owners argue that new notices and publication of the sheriff's sale were required, because the sale was postponed for more than 130 days. Here too, the Owners' argument assumes facts that are not in evidence.

As the learned Judge Seirra Thomas Street, writing for the Court of Common Pleas of Philadelphia County, explained in her Rule 1925(a) Opinion:

> [Pa.R.Civ.P.] 3129.3(a) provides . . . for postponements irrespective of timing, which requires new notice that complies with rule 3129.2 when a sale is stayed, continued, postponed or adjourned. [The Owners] filed a new praecipe to issue a writ of execution on July 28, 2023. Following the reissuance of the writ, [Mr. Kosashvili] sent a new notice of the upcoming October 3rd scheduled sale date to [the Owners, their then-attorneys], and other interested parties – all parties named in the Rule 3129.1 affidavit. The notice itself was dated July 28, 2023, which was more than 30 days before the scheduled sale date of October 3rd. According to the docket, [Mr. Kosashvili] filed a certificate of service on September 12, 2023, affirming that he sent notice that the property would be for sale on October 3rd, specifically pursuant to Rule 3129.2. Therefore, [he] complied with the relevant section of rule 3129.3, and there is no defect in notice.

Trial Court Opinion,10/28/24, at 9-10. The record confirms the trial court's finding that Mr. Kosashvili notified all known, interested parties of the sheriff's

sale, and the Owners in particular. Thus, I adopt its opinion and find no defect in the notice.

The Owners have mostly waived the four issues concerning notice of the sheriff's sale. Their claim that Mr. Kosashvili did not provide them with notice of the sale has no support in the record. Thus, I would dismiss that issue as meritless.

D.     *The Adequacy of the Sale Price*

Seventh, the Owners maintain that the sales price for the property was grossly inadequate. **See** Owners' Brief at 26-27. However, they offer no legal argument to support that claim.

Instead, they observe that the purchaser of the property, Zeon Real Estate LLC, "was acting on behalf of" Mr. Kosashvili. **Id.** at 27. Based on that fact, the Owners infer that Mr. Kosashvili "cannot aver the purchase price in this case was the highest and best as proper publication did not occur in this matter prior to the scheduled sale." **Id.** at 27. "More importantly, the docket maintained by the office of judicial records . . . noted the October 3rd, 2023 sheriff's sale had been postponed. Thus, it cannot be presumed that the price received was the highest and best obtainable." **Id.**

This is not a legal argument, so much as it is factual speculation by the Owners. The law "presume[s] that the price received at a duly advertised public sale is the highest and best obtainable." **Bank of America, N.A. v. Estate of Hood**, 47 A.3d 1208, 1211 (Pa. Super. 2012).

The Owners reason that, because the Sheriff's Office marked on the docket that a prior sale had been postponed, the public must have looked up the docket in this case, saw the entry, and decided not to attend the online auction. There is nothing of record to support the Owners' speculation. No member of the public testified that they (a) looked at the court docket and (b) decided not to participate in the online sale as a result. Thus, the Owners' appellate argument lacks any factual basis in the record. By failing to develop the record below, the Owners have not carried their burden of showing that the sheriff's sale should be set aside based on "clear and convincing evidence that the circumstances warrant relief." **M & T Mortg.**, 826 A.2d at 879.

I would dismiss this issue as warranting no appellate relief.

*E. The September 27th Docket Entry and Due Process*

The Owners' eighth issue suggests that the September 27, 2023 entry by the Sheriff's Office of "Sale postponed" deprived them of due process. They claim that that docket entry referred to the upcoming October 3, 2023 sale, rather than a prior sale, as Attorney Wakefield testified. **See** Owners' Brief at 28-30. The Owners essentially believe that the docket entry canceled the October 3, 2023 sheriff's sale.

Their belief is mistaken. Moreover, they cite to no law indicating that the Sheriff's Office has the legal authority to postpone a sale by unilaterally making a docket entry.

Mr. Kosashvili correctly responded to the Owners' argument on this issue as follows:

At the first of the two hearings before the trial court on this matter, [the Owners'] counsel stated, "When Mr. Zwick had contacted me regarding this, I looked up the docket, which that's the official docket that shows that it was postponed. I said, 'No, we don't need to file an emergency motion, it's postponed. It would be moot if I filed an action.'" N.T. 2/29/24 7: 7-12. The [Owners'] counsel went on to say, "So, here Mr. Zwick doesn't do anything, because he looks at the official docket. I look at the docket, and I say, 'It's postponed. We'll take it from there.'" N.T. 2/29/24 8:25 – 9:3.

At the second hearing, [the Owners] reiterated that the September 27, 2023 docket entry was misleading and that they thought it meant that the upcoming October 3, 2023 sale was postponed. Trial Ct. Op. at 8-9; citing to N.T. 04/11/24 3:19-5:17. This allegedly led [the Owners] to think that filing a Motion to Postpone the sale would be redundant. *Id.* at 9. As both critically and correctly noted by the trial court, similar entries were made previously on the docket after the scheduled sheriff's sale of the property – "in fact the September 27 entry was the eighth identical entry" and "these entries only appeared after a sale that was scheduled for earlier in that month." *Id.* (emphasis added).

Insofar as [the Owners] attempt to argue that the administrative docketing entry by the Sheriff's Office led [the Owners'] counsel to believe that the October 3, 2023 sheriff's sale was postponed, [the Owners] offered no evidence or testimony to support their argument that they were deprived of their due process rights at the aforementioned hearings. Insofar as [the Owners'] current counsel argued that he had checked the docket, [the Owners'] current counsel did not enter his appearance in the matter until October 23, 2023 (Docket at 16). Prior to then, they were each represented by different attorneys. [The Owners] did not present any testimony or evidence to support any reliance or confusion as to the pending sale. Accordingly, the trial court correctly concluded that [the Owners] failed to demonstrate any deprivation of due process when: (i) [the Owners] had notice of the October 3rd sale two months in advance (Trial Ct. Op. at 9); (ii) [the Owners] were represented by counsel at the time who had filed multiple motions to postpone the sale in the past; and

(iii) [the Owners] could have taken action to postpone the sale at any time during those two months, but chose not to do so. *Id.*

In *GMAC Mortg. Corp. v. Buchanan*, 929 A.2d 1164 (Pa. Super. 2007), this Court affirmed a trial court's denial of a motion to set aside sheriff sale where, after appellant's counsel filed multiple motions over a period of months with the intended effect of staying the sheriff's sale, the defendant argued that they believed that the subject property . . . would be removed from the sheriff's-sale list based on a mistaken belief that they were entitled to another stay . . . There, this Court affirmed the trial court's holding that no deprivation of due process occurred, because the appellant was fully apprised of the debt; was afforded both actual and legal notice of the sheriff's sale months before the scheduled date; had ample time to cure the default or request emergency relief prior to the sheriff's sale and did not do so; and never appeared at the sale to verify that the property was removed from the list. *Id.* This Court further concluded, "Under these circumstances, we cannot agree that appellant was deprived of his due process rights. We see no basis on which we could conclude that the trial court committed an abuse of discretion in refusing to grant the petition to set aside the sheriff's sale." *Id.*

The trial court's decision to deny the motion to set aside sheriff's sale, in part, relies on nearly the same logic and rationale as applied in *GMAC Mortg. Corp.* Like the circumstances in *GMAC Mortg. Corp.*, (i) [the Owners] had months of actual notice prior to the scheduled sheriff's sale, (ii) [their] counsel filed multiple motions intended to postpone the sale, and (iii) [the Owners] had months to take action to further postpone the sale but did not do so. Trial Ct. Op. at 9. Additionally, as was the case in *GMAC Mortg. Corp.*, [the Owners] did not provide any case law, statutory provision, or statewide procedural rule to support their due process argument. As such, the trial court did not abuse its discretion in refusing to grant [their] petition on due process grounds.

Kosashvili's Brief at 24-27 (some punctuation omitted).

I adopt the above, well-reasoned argument as my analysis for this issue, and I would dismiss the Owners' eighth appellate issue as meritless.

F.    *Attorney Wakefield's Testimony*

Lastly, the Owners claim that the trial court abused its discretion by allowing Attorney Wakefield to testify regarding his knowledge of the "Sale postponed" docket entries.  **See** Owners' Brief at 31-34.

The trial court did not rely upon Attorney Wakefield's testimony when it denied the Owners' Motion to Set Aside the Sheriff's Sale.  The court explained that Attorney Wakefield "spoke to the specific type of docket entry in question, of which he did have knowledge, because it is common and required in certain situations after a sheriff's sale does not result in a sale of property."  Trial Court Opinion, 10/28/24, at 10 (citing Pa.R.Civ.P. 3139, "The sheriff shall make a return . . . upon the completion or abandonment of the execution proceedings . . . ").  The trial court "appreciated" Attorney Wakefield's testimony, but his "explanation was not the primary basis for the court's decision."  Trial Court Opinion, 10/28/24, at 10.

Thus, whether the trial court abused its discretion by entertaining the testimony of Attorney Wakefield is either moot or, at best, harmless error.  I would dismiss it as such.

### IV.   Conclusion

The Majority has erred by misconstruing the Owners' argument that Mr. Kosashvili lacks standing for an argument that the trial court lacks subject-matter jurisdiction over transferred-judgment-enforcement proceedings.  The

Owners failed to preserve any standing argument, because they did not raise it by filing preliminary objections to the praecipe for the writ of execution.

Moreover, the assertion that Mr. Kosashvili may not enforce the civil judgment that he transferred from Montgomery County to Philadelphia, simply because the General Assembly ordered the Probation Office of Montgomery County to collect and pay Mr. Kosashvili the restitution that Barzilayeva owes him is meritless. Once the restitution order from Montgomery County was reduced to a civil judgment, Mr. Kosashvili, as the real party in interest to the theft and conversion of his $154,876.03, had standing to bring this civil proceeding to enforce the civil judgment against Barzilayeva. If I am mistaken in that interpretation, then I hope that the General Assembly will amend our restitution statutes to permit victim-enforcement proceedings, like the one Mr. Kosashvili initiated in the Philadelphia court.[10]

_____

[10] Most legislatures across the country have already taken steps to avoid the result that the Majority imposes here by specifically granting crime victims standing to enforce restitution orders once reduced to civil judgments. They are Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Montana, Nebraska, New Jersey, New Mexico, New York, North Dakota, Ohio, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. *See* Carolyn Carter, Ariel Nelson, and Abby Shafroth, COLLECTING CRIMINAL JUSTICE DEBT THROUGH THE STATE CIVIL JUSTICE SYSTEM, *Appendix A: State Laws Allowing Restitution Obligation to Be Treated as a Civil Judgment* (2021), available at https://www.nclc.org/wp-content/uploads/2022/08/CJ_State_Civil_Justice_App_A-1.pdf (last visited 3/20/26). The legislatures of Mississippi and Vermont have prohibited victims from civilly enforcing a restitution-based judgment. *See id.* The restitution statutes of the remaining 13 States (like Pennsylvania's statutes) neither deny
*(Footnote Continued Next Page)*

In my view, the Owners have no basis for appellate relief. Therefore, I would affirm the order refusing to set aside the sheriff's sale. Accordingly, I respectfully dissent.

---

nor expressly grant crime victims the right to enforce civil judgments entered following an order of restitution. ***See id.***